207 P.3d 459 (2009)
STATE of Washington, Respondent,
v.
Corinne Paulette DIXON, Appellant.
No. 37553-2-II.
Court of Appeals of Washington, Division 2.
May 5, 2009.
*461 Manek R. Mistry, Jodi R. Backlund, Backlund & Mistry, Olympia, WA, for Appellant.
Carol L. La Verne, Thurston County Prosecutor's Office, Olympia, WA, for Respondent.
VAN DEREN, C.J.
¶ 1 Corrine Pauline Dixon appeals her convictions for methamphetamine possession and bail jumping. She argues that sufficient evidence did not support the bail jumping conviction and that the prosecutor's misconduct requires reversal of the methamphetamine possession conviction. The State concedes that the evidence was insufficient to convict Dixon of bail jumping. The State further concedes that the prosecutor's argument that Dixon should have testified was improper but it does not concede that the prosecutor's argument amounted to prosecutorial misconduct sufficient to require reversal. We reverse and dismiss with prejudice the bail jumping conviction and reverse and remand the methamphetamine conviction for a new trial.

FACTS
¶ 2 On August 16, 2007, Thurston County Deputy Sheriff Michael Stewart, after conducting a random license plate check, stopped Dixon for driving with a suspended or revoked license. Stewart arrested Dixon and searched her purse incident to the arrest. Inside Dixon's purse, Stewart found a substance that later testified positive for methamphetamine. The State charged Dixon with third degree driving while license suspended or revoked (count III), unlawful possession of a controlled substance  amphetamine (count I), and unlawful possession of less than 40 grams of marijuana (count II).
¶ 3 On August 28, 2007, Dixon appeared for arraignment. She entered not guilty pleas and the trial court set trial for November 12.[1] The parties later agreed to continue the November 12 trial date. In granting the continuance, the trial court said that it would "mark this ready for two-day trial to go out on the 31st or later next week." Report of Proceedings (RP) (Dec. 26, 2007) at 3.
¶ 4 Dixon did not appear in court when trial was ready to begin on January 2, 2008. The trial court stated:
The matter was scheduled to come on for jury trial today based upon an agreed order of continuance rescheduling the trial date from November 12th, 2007, to December *462 31st, 2007  the week of December 31st.
Defendant signed that order. I don't know if she was advised that trial would take place today, as opposed to the 31st. She was last in court apparently on the 26th of December.
...
[Defense counsel] indicated to me that the last actual conversation she had with Ms. Dixon was sometime in mid or late October.
The trial court recessed to allow defense counsel to attempt to contact Dixon. Defense counsel contacted Dixon's mother, who indicated that Dixon was in trial in Auburn. The prosecutor successfully moved the trial court to issue a no-bail bench warrant for Dixon and filed an amended information that added bail jumping (count IV) to the other charges against her.
¶ 5 Dixon turned herself in when she learned of the warrant. She appeared in court on January 10, 2008, and explained that she had appeared in court on December 31. The trial court stated that Dixon "knew that the trial was set December 31st, although it appears that the matter was not called for trial on that day, that being the day before a holiday, was instead called for trial a day later." RP (Jan. 10, 2008) at 8. The trial court set bail at $5,000 and Dixon was taken into custody.[2]
¶ 6 At trial, Stewart testified that he stopped Dixon on August 16, 2007, "[b]ecause [he] was notified by the department of licensing that the registered owner was driving with a suspended or revoked license." RP (Mar. 12, 2008) at 17. Dixon was "very jittery, extremely nervous" when he approached the car. RP (Mar. 12, 2008) at 19. Stewart arrested Dixon for driving with a suspended license and searched her person incident to the arrest. He also searched Dixon's purse, where he found "some green vegetable matter and a small Ziploc bag containing a crystal, white substance that [he] believed to be methamphetamine." RP (Mar. 12, 2008) at 19-20. The purse was "[r]ight next to [Dixon's] right arm" in the vehicle, and Dixon identified it as her purse. RP (Mar. 12, 2008) at 22.
¶ 7 On cross-examination, Stewart testified that there was a male passenger in Dixon's car. Stewart did not write down the passenger's name, but he "conduct[ed] ... a check through the department of licensing, and [the passenger's identification] came back clear with no warrants." Stewart conducted a safety pat-down of the passenger, searched his backpack, and then "asked him to move to the front of the vehicle." The passenger was "within [his] line of vision the whole time [he] was conducting the search and the arrest [of Dixon]." Stewart admitted that his practice is now to write down passengers' names but that he was "still in the learning process" when he arrested Dixon. RP (Mar. 12, 2008) at 23-24. He testified that he asked the passenger whether the methamphetamine belonged to him, and the passenger "denied any ownership of that." RP (Mar. 12, 2008) at 25.
¶ 8 Dixon then asked Stewart the following:
[Defense Counsel:] ... Did you question [Dixon] whether she was under any sort of duress or danger while she was driving?
[Stewart:] No, I did not.
[Defense Counsel:] So we don't know this other person's name and we don't really know the reason for his presence in the car; is that correct?
[Stewart:] He was a friend of hers. I did gather that much.[[3]]
RP (Mar. 12, 2008) at 25-26.
¶ 9 Dixon did not testify. During closing argument, defense counsel noted that *463 "[t]here is doubt" about her control over the purse because "[t]here was an unknown person in the car." RP (Mar. 12, 2008) at 66. In rebuttal, the prosecutor stated:
I want to pose this question to you: Why didn't [Dixon] bring that passenger in to testify for her? She knew who he was. He was her friend, that's what Deputy Stewart said. Deputy Stewart said he didn't write this guy's name down because he didn't do anything wrong. He didn't need to write his name down. This passenger didn't commit a crime, the defendant did. And if that passenger had anything at all to say, don't you think [Dixon] would have contacted him? She knew who he was. He was in her car. She didn't call him.
That passenger  what they're suggesting is that passenger put the drugs in her purse, but there's no evidence of that whatsoever, whatsoever. As a matter of fact, Deputy Stewart said he didn't see that passenger put anything in her purse. Did the defendant make any statement that "he put that in my purse"? No. We didn't hear any of that testimony. There's nothing, absolutely nothing that indicates that that passenger had anything to do with this.
RP (Mar. 12, 2008) at 69-70.
¶ 10 The jury convicted Dixon of unlawful possession of methamphetamine and bail jumping. The trial court sentenced her to five and one half months' incarceration on each count, to be served concurrently.
¶ 11 Dixon appeals.

ANALYSIS

I. Bail Jumping Conviction
¶ 12 Dixon first argues that the evidence was insufficient to prove that she committed the crime of bail jumping. The State concedes in its brief "that there was insufficient evidence produced at trial to prove beyond a reasonable doubt that Dixon received notice of the trial date on which she failed to appear." Br. of Resp't at 1 (emphasis omitted). The State "agrees that the bail jumping charge should be dismissed." Br. of Resp't at 2. We accept the State's concession based on our own review of the record.
¶ 13 Because the State concedes that there was insufficient evidence to support the bail jumping conviction and because there is insufficient evidence when viewed in the light most favorable to the State that Dixon had knowledge that the trial would commence on January 2, we reverse and dismiss the bail jumping charge.

II. Prosecutorial Misconduct
¶ 14 Dixon next argues that "[t]he prosecuting attorney committed misconduct requiring reversal of the possession conviction." Br. of Appellant at 7 (emphasis omitted). She argues that the prosecutor "unconstitutionally shifted the burden of proof" when he "(1) argued that Ms. Dixon should have brought the missing passenger to court to testify and (2) suggested that Ms. Dixon should have testified and denied possession of the drugs." Br. of Appellant at 8-9. We agree.

A. Standard of Review
¶ 15 To establish prosecutorial misconduct, an appellant must prove that the prosecutor's conduct was improper and that this improper conduct prejudiced his right to a fair trial. "Prejudice on the part of the prosecutor is established only where `there is a substantial likelihood the instances of misconduct affected the jury's verdict.'" State v. Dhaliwal, 150 Wash.2d 559, 578, 79 P.3d 432 (2003) (quoting State v. Pirtle, 127 Wash.2d 628, 672, 904 P.2d 245 (1995)). We review a prosecutor's comments during closing argument in the context of the total argument, "the issues in the case, the evidence addressed in the argument, and the jury instructions." Dhaliwal, 150 Wash.2d at 578, 79 P.3d 432; State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997).
¶ 16 A defendant's failure to object to an improper remark by the prosecutor constitutes a waiver of that error unless the remark is "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by *464 an admonition to the jury." State v. Stenson, 132 Wash.2d 668, 719, 940 P.2d 1239 (1997).

B. Missing Witness Argument
¶ 17 Dixon first argues that the prosecutor committed misconduct when he commented on Dixon's failure to call the passenger as a trial witness. She argues that the missing witness doctrine does not apply because (1) the State presented no evidence that Dixon had control over the witness, (2) Dixon "ha[d] an explanation for the passenger's absence," and (3) "the [S]tate did not raise the missing witness argument until after both parties had rested." Br. of Appellant at 10. Dixon also argues that "[t]he prosecutor's improper comments were not invited or provoked by defense counsel" because Dixon did not "`unequivocally' suggest[ ] that the passenger would have testified that the drugs belonged to him." Reply Br. of Appellant at 5 (quoting State v. Montgomery, 163 Wash.2d 577, 598 n. 12, 183 P.3d 267 (2008)).
¶ 18 The State responds that the prosecutor's comments were permissible because Dixon "essentially blamed the passenger for possessing the methamphetamine and planting it in Dixon's purse." Br. of Resp't at 3. It argues that Dixon invited or provoked the prosecutor's comments and, therefore, the comments are not grounds for reversal.

1. The Missing Witness Doctrine Does Not Apply
¶ 19 A prosecutor may not comment "on the lack of defense evidence because the defendant has no duty to present evidence." State v. Cleveland, 58 Wash.App. 634, 647, 794 P.2d 546 (1990). But if the missing witness doctrine applies, the prosecutor may comment on the defense's failure to call a witness. Montgomery, 163 Wash.2d at 597-98, 183 P.3d 267. Under the doctrine, if a party fails to call a witness to provide testimony that would properly be part of the case, the testimony would naturally be in the party's interest to produce and the witness is within the control of the party, the jury may be allowed to draw an inference that the testimony would be unfavorable to that party. State v. Blair, 117 Wash.2d 479, 485-86, 816 P.2d 718 (1991).
¶ 20 When the missing witness doctrine is applied against a criminal defendant, certain limitations apply:
First, the doctrine applies only if the potential testimony is material and not cumulative. Second, the doctrine applies only if the missing witness is particularly under the control of the defendant rather than being equally available to both parties. Third, the doctrine applies only if the witness's absence is not satisfactorily explained.... Finally, the doctrine may not be applied if it would infringe on a criminal defendant's right to silence or shift the burden of proof.
Montgomery, 163 Wash.2d at 598-99, 183 P.3d 267 (internal citations omitted). A prosecutor may only "comment on the defendant's failure to call a witness" where "it is clear the defendant was able to produce the witness and the defendant's testimony unequivocally implies the uncalled witness's ability to corroborate his theory of the case." State v. Contreras, 57 Wash.App. 471, 476, 788 P.2d 1114 (1990).
¶ 21 Here, Dixon did not "unequivocally impl[y]" that the passenger would have corroborated her defense theory. Moreover, the evidence was insufficient to show that the passenger was particularly under Dixon's control. The only evidence suggesting that Dixon had a relationship to the passenger was Stewart's testimony that he "gathered" the passenger to be Dixon's friend. And there were at least two satisfactory explanations for the passenger's absence from trial: first, there is evidence in the record that the parties were unable to locate the passenger and, second, there is a substantial likelihood that any testimony in Dixon's favor would have caused the passenger to incriminate himself. See Montgomery, 163 Wash.2d at 599, 183 P.3d 267. Finally, the prosecutor shifted the burden of proof to Dixon when he implied that she should have presented evidence to support her defense.
¶ 22 The State concedes that "the situation here does not fit squarely into the missing witness rule." Br. of Resp't at 4. But it argues that, even if the missing witness doctrine does not apply, Dixon invited the comments *465 because the prosecutor was responding directly to Dixon's comment during her closing argument that the passenger caused reasonable doubt.

2. The Comments Were Not Invited or Provoked
¶ 23 "[E]ven if improper, a prosecutor's remarks that are in direct response to a defense argument are not grounds for reversal as long as the remarks do not `go beyond what is necessary to respond to the defense and must not bring before the jury matters not in the record, or be so prejudicial that an instruction cannot cure them.'" State v. Francisco, 148 Wash.App. 168, 178-79, 199 P.3d 478 (2009) (quoting State v. Dykstra, 127 Wash.App. 1, 8, 110 P.3d 758 (2005)).
¶ 24 During closing arguments, Dixon's counsel addressed Dixon's dominion and control over her purse, where the methamphetamine was found. Counsel argued, "We don't know enough about [the passenger's] presence in the car to assume or to conclude that Ms. Dixon was in dominion and control of the substance that was in her purse." RP (Mar. 12, 2008) at 66. Counsel argued:
And so, ladies and gentlemen, I would say that you cannot find beyond a reasonable doubt that she is guilty of the crime of possession of a controlled substance methamphetamine. There is doubt there. I just told you what it is. There was an unknown person in the car. We don't know enough about that person because, like the officer said, he was still learning and he did not get enough information about this person to tell us what the reason was for his presence and what he was doing while Ms. Dixon was being arrested.
RP (Mar. 12, 2008) at 66.
¶ 25 The prosecutor's responding argument improperly suggested that Dixon should have called the passenger to testify. The prosecutor adequately rebutted Dixon's argument of reasonable doubt by pointing to the lack of evidence that the passenger placed anything in the purse, based on Stewart's testimony. The argument that Dixon should have produced the passenger for live testimony went beyond what was necessary to rebut Dixon's counsel's statements and, when coupled with the argument that Dixon should have testified, was so prejudicial that a jury instruction could not have cured the prejudice.

C. Dixon's Right to Remain Silent
¶ 26 Dixon also argues that "[t]he prosecuting attorney commented on Ms. Dixon's constitutional privilege against self-incrimination," thereby violating the Fifth Amendment of the U.S. Constitution. Br. of Appellant at 11. She argues that the prosecutor "commented on Ms. Dixon's silence by pointing out that she had not said that her passenger had put the drugs in her purse," and that the comment "went directly to Ms. Dixon's strategy of suggesting that there was a reasonable doubt on the issue of possession." Br. of Appellant at 12. She further argues that the prosecutor's misconduct "infringed [her] constitutional right to the presumption of innocence and violated the constitutional requirement that the prosecution bear the entire burden of proof" and that "[s]uch misconduct may be reviewed even absent an objection from defense counsel." Reply Br. of Appellant at 5 (citing RAP 2.5(a)).

1. Standard of Review
¶ 27 A defendant's failure to object to an improper remark on his constitutional right to silence does not waive the issue on appeal so long as the remark amounts to a manifest error. See RAP 2.5(a)(3). But where the alleged prosecutorial misconduct affects a constitutional right,[4] *466 the two prong test is (1) whether the prosecutor's conduct was improper and (2) whether there is a substantial likelihood that the misconduct affected the verdict. State v. Gregory, 158 Wash.2d 759, 809, 147 P.3d 1201 (2006); State v. Russell, 125 Wash.2d 24, 86, 882 P.2d 747 (1994). The State concedes that the prosecutor's statement that Dixon should have testified was improper. Therefore, we must decide whether there is a substantial likelihood that the statement regarding Dixon's failure to testify affected the verdict.

2. The Prosecutor's Argument Improperly Shifted the Burden
¶ 28 The State argues that "[i]t is not reasonable to think that this one statement was so persuasive as to cause the jury to ignore the jury instructions and convict based on the prosecutor's argument." Br. of Resp't at 8. Here, the prosecutor argued that Dixon should have testified and accused the passenger of placing the methamphetamine in her purse. He said, "Did the defendant make any statement that `he put that in my purse'? No. We didn't hear any of that testimony." RP (Mar. 12, 2008) at 69. This statement went beyond what would have been adequate to rebut Dixon's comments. Furthermore, the prosecutor suggested that Dixon had an obligation to testify and to produce evidence of another person's guilt through the second person's live testimony.
¶ 29 Under these circumstances, where (1) the evidence of Dixon's guilt was based solely on Stewart's testimony that Dixon had control over the purse and that Dixon was jittery at the time of the arrest and (2) the prosecutor argued that Dixon should have produced a witness to testify that he possessed the methamphetamine instead of Dixon and that Dixon herself should have testified to deny the State's accusations, there is a substantial likelihood that the prosecutor's comments affected the trial's outcome and that an instruction would not have cured the effect of the prosecutor's comments.
¶ 30 We reverse the bail jumping conviction and remand for dismissal with prejudice on that count and we reverse the methamphetamine possession conviction and remand for a new trial.
I concur: ARMSTRONG, J.
HUNT, J. (dissenting and concurring).
¶ 31 I concur in the majority's reversal of Dixon's bail-jumping conviction and their remand for dismissal with prejudice. But I respectfully dissent from the majority's reversal of Dixon's methamphetamine possession conviction based on prosecutorial misconduct, for two reasons. First, except for one remark[5] in its rebuttal closing argument, the State mentioned Dixon's failure to call her passenger as a witness solely in response to her having "opened the door" in her closing argument. Second, even if the State's remarks were improper, they do not warrant reversal because Dixon fails to show that they were "so flagrant and ill-intentioned" that a curative instruction could not have remedied any undue prejudice. And Dixon failed to request a curative instruction.

I. Prosecutorial Misconduct Standards
¶ 32 To establish a claim of prosecutorial misconduct, an appellant must show that the prosecutor's comments were both improper and prejudicial. State v. Fisher, 165 Wash.2d 727, 202 P.3d 937, 947 (2009). If established, prosecutorial misconduct warrants reversal where there is a substantial likelihood that the improper conduct affected *467 the jury. Id. But defense counsel's failure to object to prosecutorial misconduct constitutes waiver on appeal unless the misconduct is "`so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" incurable by a jury instruction. Id. (quoting State v. Gregory, 158 Wash.2d 759, 841, 147 P.3d 1201 (2006)). Such is not the case here.
¶ 33 Some improper prosecutorial remarks can touch on a constitutional right but still be curable by a proper instruction to the jury. State v. Smith, 144 Wash.2d 665, 679, 30 P.3d 1245 (2001). If, as here, defense counsel failed to request a curative instruction, we are not required to reverse. Fisher, 202 P.3d at 947 (citing State v. Russell, 125 Wash.2d 24, 85, 882 P.2d 747 (1994)). Moreover, even if improper, a prosecuting attorney's remarks do not require reversal when "they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." State v. Gentry, 125 Wash.2d 570, 643-644, 888 P.2d 1105 (1995) (emphasis added). Again, such is not the case here.

II. Invitation And Provocation
¶ 34 The State mentioned nothing about a missing witness in its closing argument. Rather, it was Dixon's counsel who, in closing argument, first asserted: "[Dixon's passenger] had the means and the opportunity to put [the drugs] in Ms. Dixon's purse." Report of Proceedings (RP) (March 12, 2008) at 65. Dixon's counsel further asserted:
There was an unknown person in the car. We don't know enough about that person because, like the officer said, he was still learning and he did not get enough information about this person to tell us ... what [this person] was doing while Ms. Dixon was being arrested.
RP (March 12, 2008) at 66. By introducing Dixon's alibi theory in closing argument, her counsel implicitly invited the State to reply. The State was entitled to respond to Dixon's new "alibi" defense, which she raised just before the case was to go to the jury.
¶ 35 Thus, it was only after Dixon raised the specter of her passenger's having planted the drugs in Dixon's purse that the State responded in rebuttal closing argument:
Why didn't [Dixon] bring that passenger in to testify for her? ... And if that passenger had anything at all to say, don't you think that [Dixon] would have contacted him?
That passenger  what they're suggesting is that passenger put the drugs in her purse.
RP (March 12, 2008) at 69. Especially in light of Dixon's having opened the door and invited these remarks, Dixon fails to show that these remarks were so flagrant and ill-intentioned as to require reversal. Gentry, 125 Wash.2d at 643-44, 888 P.2d 1105.
¶ 36 Furthermore, Dixon neither objected to these remarks nor requested a curative instruction. Therefore, Dixon is not entitled to reversal of her conviction unless she can meet her burden of demonstrating that the State's comments were so prejudicial as to be incurable by instruction. In my view, she fails to meet this burden.

III. No Incurable Prejudice
¶ 37 I agree with the State's concession that the following portion of the prosecutor's closing argument was an improper comment on Dixon's constitutional right to remain silent:[6] "Did [Dixon] make any statement that `[Dixon's passenger] put that in [her] purse'? No. We didn't hear any of that testimony." RP (March 12, 2008) at 69. Nevertheless, as I noted earlier, a timely requested proper instruction may cure even an improper prosecutorial remark implicating a defendant's constitutional right. See Smith, 144 Wash.2d at 679, 30 P.3d 1245. Again, Dixon fails to demonstrate prejudice requiring reversal from this remark or from the remarks responding to her raising the issue of a missing exculpatory witness.
*468 ¶ 38 First, Dixon failed to object to the prosecutor's remarks at trial. As I earlier noted, Dixon must therefore prove that these remarks were incurable by a jury instruction. Fisher, 202 P.3d at 947. Here, Dixon failed to request such a curative instruction. Therefore, the lack of a special curative instruction does not require us to reverse her conviction. Id.
¶ 39 Second, the prosecutor's remarks were not prejudicial in light of the State's evidence against Dixon. Dixon admitted the purse containing the drugs belonged to her. The arresting officer found the purse within arm's reach of Dixon and testified that Dixon had control over the purse. Dixon was jittery and extremely nervous at the time of the arrest. Dixon's passenger denied ownership of the drugs. The arresting officer kept Dixon's passenger within his line of vision during the entire stop and arrest, and he saw no placement of anything by the passenger in Dixon's purse.
¶ 40 Moreover, the trial court did give instructions to the jury that ameliorated any prejudice to Dixon that might have flowed from the prosecutor's remarks. The trial court instructed the jury that (1) the lawyers' statements were not evidence, (2) the jury must disregard any statement or argument not supported by the evidence, (3) Dixon was presumed innocent and that presumption continued throughout the trial unless the jury found the presumption overcome by the State's evidence beyond a reasonable doubt, (4) the State bore the entire burden of proving its case, (5) Dixon bore no burden to prove reasonable doubt, and (6) the jury could not use the fact that Dixon had not testified to infer guilt or to prejudice her in any way. We presume the jury followed these instructions. State v. Warren, 165 Wash.2d 17, 28, 195 P.3d 940 (2008).
¶ 41 Given the strength of the State's evidence and the court's instructions to the jury, there is no substantial likelihood that the prosecutor's comments caused any prejudice to Dixon that could not have been cured by a curative instruction or materially affected the outcome of the trial. Accordingly, I concur in the majority's reversal of Dixon's bail-jumping conviction and remand for dismissal with prejudice. But I dissent from the majority's reversal of her methamphetamine possession conviction, which I would affirm.
NOTES
[1] On March 12, 2008, Dixon entered pleas as to the two misdemeanor charges: unlawful possession of less than 40 grams of marijuana and third degree driving while license suspended or revoked. The trial court orally amended the information to include only the remaining two counts: unlawful possession of methamphetamine and bail jumping. The bail jumping charge was added by an amended information filed with the trial court on January 2, 2008.
[2] The trial court set the trial for March 3, the pretrial omnibus for January 28, and the status hearing for February 27. Dixon did not appear in court on January 28, 2008. The trial court issued another no-bail bench warrant.
[3] The State also called Tami Kee, a forensic scientist with the Washington State Patrol Crime Laboratory, who testified that the substance found in Dixon's purse was methamphetamine. Finally, the State called Dawn Nastansky, a Thurston County court clerk, who testified that she was assigned as the clerk for Dixon's January 2 jury trial and that Dixon did not appear for trial on that day.
[4] Here, both parties cite harmless error as the proper test for prosecutorial misconduct affecting a constitutional right. Various opinions of Division One and Three of this court have held that prosecutorial misconduct affecting a constitutional right is subject to the constitutional harmless error test, rather than the prosecutorial misconduct two part test. See, e.g., State v. French, 101 Wash.App. 380, 386, 4 P.3d 857 (2000); State v. Contreras, 57 Wash.App. at 473, 788 P.2d 1114. We held in State v. Traweek that a prosecutor's comment is "subject to the stricter standard of constitutional harmless error" if it "also affects a separate constitutional right, such as the privilege against self-incrimination." 43 Wash.App. 99, 107-08, 715 P.2d 1148 (1986), overruled on other grounds by State v. Blair, 117 Wash.2d at 485-86, 816 P.2d 718. See also State v. Davenport, 100 Wash.2d 757, 761-62 & n. 1, 675 P.2d 1213 (1984) (holding that harmless error analysis does not apply to cases of trial irregularity involving prosecutorial misconduct, but that such trial irregularity does not "independently violate a defendant's constitutional rights").

But in State v. Warren, the Washington Supreme Court recently declined to reach "the issue of whether a constitutional error analysis might be appropriate if the prosecutorial misconduct directly violated a constitutional right," noting that the prosecutorial misconduct two part test "has long been our approach to analyzing prosecutorial misconduct." 165 Wash.2d 17, 26 n. 3, 195 P.3d 940 (2008). Because the misconduct meets the two part test, we decline to analyze it under the stricter constitutional harmless error analysis.
[5] See section III, infra.
[6] "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.