# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

BY_____
DEPUTY

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44208-6-II |
| Respondent, | |
| v. | |
| MICHAEL DERRELL MILAM, | UNPUBLISHED OPINION |
| Appellant | |

MELNICK, J. — Michael Derrell Milam appeals his convictions and sentences for three counts of second degree identity theft, three counts of first degree trafficking in stolen property, nine counts of second degree possession of stolen property, and one count of possession of a controlled substance (marijuana). Milam contends that the evidence was insufficient to support his convictions for trafficking in stolen property and possession of stolen property and that the prosecuting attorney committed misconduct during closing argument. Milam raises several additional claims of error in his self-represented statement of additional grounds (SAG). We hold that there is sufficient evidence to prove the crimes beyond a reasonable doubt and that the prosecutor's comments did not shift the burden of proof to Milam. The claims of error in the SAG lack merit. Consequently, we affirm Milam's convictions and sentences.

## FACTS

On the morning of May 31, 2012, Carol Bautista's wallet was taken from her office at Pacific Lutheran University. The wallet contained several debit and credit cards, Social Security cards, and driver's licenses belonging to her and her family. Bautista reported the theft to the police.

At around 11:30 that evening, Lakewood Police Officers Andrew Hall, Shawn Noble, and Jeremy James were patrolling South Tacoma Way. Hall, in plain clothes, drove an unmarked car; the other officers were surveilling him.

Milam was following a woman in an area known for prostitution. Hall observed the pair and thought the man might be either her pimp or a customer. Hall pulled into a parking lot, and Milam walked towards him, talking and making hand gestures. Hall exited the lot and contacted the other officers who established surveillance in an adjacent parking lot. Hall noticed Milam attempting to get the attention of passing cars and thought that he might be trying to sell or solicit something.

With the other officers watching him and awaiting his signal, Hall drove back to the lot where Milam initially approached him. Milam yelled, "Hey, can you help me?" 2 Report of Proceedings (RP) at 133. Hall responded, "What's up?" 2 RP at 133. Milam came over to the car and said, "I got what you need." 2 RP at 133. Milam pulled credit cards, Social Security cards, and a driver's license from his pocket and fanned them out to show Hall.

After Hall expressed interest, Milam sat in the front passenger seat of Hall's car. Milam again displayed the cards. Hall could see the numbers, names, and a woman's photograph on the driver's license. When Hall asked if Milam had credit cards that matched the identification cards, Milam said that he did. Hall asked how much Milam wanted for the cards; Milam replied "30 to 50." 2 RP at 136. Milam instructed Hall to drive to a more private area where no one else would see the transaction. While pulling out of the parking lot, Hall gave a predetermined signal to the other officers indicating that he had probable cause to arrest.

Noble and James activated their lights and pulled Hall over. To protect Hall's true identity, James pretended to detain him at the front of the car while Noble detained Milam at the back of the car. During a weapons pat down, Noble found a glass pipe in Milam's pocket.

After conferring with Hall, Noble arrested Milam and conducted a more thorough search. II RP 141-42. A stack of credit, debit, Social Security and identification cards belonging to the Bautistas were found in Milam's pocket. Noble handed the cards and the pipe to James who "booked" them into the evidence room at the police station. 2 RP at 172.

During a subsequent videotaped interview at the police station, Milam admitted that he was trying to sell the cards and that he knew it was wrong. He explained that he got the cards from a couple at a nearby gas station in exchange for marijuana. When asked if he thought the couple who traded the cards had stolen them, Milam replied, "I know they did." Redacted Interview, *State v. Milam*, No. 12-1-02048-7, (Apr. 1, 2012), digital video recording by Pierce County Police Department (on file with Wash. Court of Appeals, No. 44208-6-II) (Ex. 18), at 17 min., 12 sec. Milam confirmed several times that the cards in his possession were stolen.

Following his interview, Milam was transported to jail. During booking, officers found marijuana rolled into one of his socks.

The State charged Milam by amended information with nine counts of second degree possession of stolen property, three counts of second degree identity theft, three counts of first degree trafficking in stolen property, one count of unlawful possession of a controlled substance, and one count of unlawful use of drug paraphernalia. The State alleged aggravating factors for sentencing purposes on each crime based on Milam's high offender score and multiple current offenses.

Prior to trial, the court found that Milam knowingly, voluntarily, and intelligently waived his right to counsel. The State called Hall, James, and Carol Bautista who testified consistent with the above-referenced facts. Bautista identified the cards the police recovered as belonging to her and her family. The officer who found the marijuana and the forensic scientist who tested it also testified. Noble, who resigned from the police force prior to trial, did not appear. Milam did not call any witnesses and did not testify.

The jury acquitted Milam of the drug paraphernalia count but otherwise found him guilty as charged. The trial court granted Milam's request to be represented by counsel during sentencing. During the sentencing hearing, the court agreed with the parties that Milam's possession of stolen property convictions counted as one offense under the same criminal conduct rule and calculated his offender score as 24. Because of Milam's high offender score and multiple current offenses, the trial court imposed concurrent aggravated exceptional sentences on each count, for a total of 120 months of confinement.

Milam now appeals his convictions and his exceptional sentences.

## ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Milam argues that the evidence was insufficient to prove his convictions for trafficking in stolen property and possession of stolen property because the State failed to prove that he knew the property he possessed and attempted to sell was stolen.

Due process requires the State to prove all elements of a crime beyond a reasonable doubt. *State v. Aver*, 109 Wn.2d 303, 310, 745 P.2d 479 (1987). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any

rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

To convict Milam of the trafficking and possession charges, the State had to prove that he acted with the knowledge that the property had been stolen. RCW 9A.82.050(1); RCW 9A.56.140(1). The trial court relied on the statutory definition of knowledge in instructing the jury that "[a] person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result." Clerk's Papers (CP) at 163; RCW 9A.08.010(1)(b).[1] Although bare possession of stolen property will not support the assumption that a person knew the property was stolen, that fact plus slight corroborative evidence of other inculpatory circumstances tending to show guilt will support a conviction. *State v. Ford*, 33 Wn. App. 788, 790, 658 P.2d 36 (1983).

---

[1] The State points out that the law defining possession of stolen property presumes that a person who possesses stolen access devices in the names of two or more people knows that they are stolen. RCW 9A.56.140(3). This presumption did not apply in this case because the possession of stolen property charges were based only on the access devices in Carol Bautista's name.

Hall testified that Milam wanted to finalize the sale of the cards in a private area, thus providing circumstantial evidence that he knew the cards he possessed were stolen. Additionally, direct evidence of such knowledge is found in Milam's videotaped interview, which was played for the jury. Milam stated during that interview that he knew the cards he displayed to Hall were stolen. At other points in the interview, Milam confirmed that he possessed and tried to sell stolen identification and credit cards. Milam's statements were more than sufficient to prove that he knew the cards he possessed and attempted to sell were stolen, and the challenge to the sufficiency of the evidence supporting his trafficking and possession of stolen property convictions fails.

## II. PROSECUTORIAL MISCONDUCT

Milam argues next that the prosecuting attorney committed prejudicial misconduct by twice shifting the burden of proof to him during closing argument.

A defendant who alleges prosecutorial misconduct first must establish that the prosecutor's conduct was improper. *State v. Emery,* 174 Wn.2d 741, 759, 278 P.3d 653 (2012). Once a defendant establishes that a prosecutor's statements were improper, we must determine whether the defendant was prejudiced. *Emery,* 174 Wn.2d at 760. If the defendant did not object at trial, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Emery,* 174 Wn.2d at 760-61. When reviewing a claim that prosecutorial misconduct requires reversal, we review the statements in the context of the entire case. *State v. Thorgerson,* 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

Milam argues that the prosecutor twice attempted to shift the burden of proof to him during closing argument by commenting on his failure to rebut the State's case. A prosecutor may not comment "on the lack of defense evidence because the defendant has no duty to present evidence." *State v. Dixon*, 150 Wn. App. 46, 54, 207 P.3d 459 (2009) (quoting *State v. Cleveland*, 58 Wn. App. 634, 647, 794 P.2d 546 (1990)). The State bears the entire burden of proving each element of its case beyond a reasonable doubt and may not shift the burden of proof to the defense. *State v. Fleming*, 83 Wn. App. 209, 215, 921 P.2d 1076 (1996).

The prosecutor made the first alleged misstatement during his initial argument. After describing Milam's admissions during his videotaped interview, the prosecutor turned to a discussion of the reasonable doubt standard that would guide the jury: "You should all not have any doubt whatsoever that he had all of these cards in his possession. There's been no testimony to the contrary." 4 RP at 264. The second set of statements at issue followed Milam's lengthy closing argument, which emphasized the absence of the arresting officer and the discrepancies over the exact location of his arrest. The prosecutor addressed these points as follows:

> The State of Washington is accusing him of a crime. Not Officer Shawn Noble. And nowhere in any of the jury instructions does it say I have to prove where he was arrested, who arrested him, even that he was placed under arrest. Because it's all irrelevant. The only thing that you need to decide is whether the State has proven all of the elements of all of the crimes that have been alleged against Mr. Milam. And I would just lastly point out that even in all of his argument, nowhere has he denied having all of those things in his possession. He says he was set up, that the officer's not here, all of this other stuff. But not once has he said those were not in his pocket and "I did not try to sell them to a police officer."

4 RP at 279-80.

Milam did not object to any of these statements but argues now that they are comparable to the misconduct in *Dixon*, where the prosecutor asked during closing argument why the defendant had not called the passenger who allegedly planted drugs in the defendant's purse to testify:

> I want to pose this question to you: Why didn't [Dixon] bring that passenger in to testify for her? She knew who he was. He was her friend, that's what Deputy Stewart said. . . . And if that passenger had anything at all to say, don't you think [Dixon] would have contacted him? She knew who he was. He was in her car. She didn't call him.
>
> That passenger—what they're suggesting is that passenger put the drugs in her purse, but there's no evidence of that whatsoever, whatsoever. As a matter of fact, Deputy Stewart said he didn't see that passenger put anything in her purse. Did the defendant make any statement that "he put that in my purse"? No. We didn't hear any of that testimony. There's nothing, absolutely nothing that indicates that that passenger had anything to do with this.

*Dixon*, 150 Wn. App. at 52. These comments shifted the burden of proof to the defendant by implying that she should have presented evidence to support her defense and warranted reversal. *Dixon*, 150 Wn. App. at 55, 58-59.

As additional support for his claim, Milam cites the misconduct in *State v. Toth*, 152 Wn. App. 610, 217 P.3d 377 (2009). The prosecutor there repeatedly emphasized that although the defendant had testified, he had presented no additional evidence to corroborate his story: "He didn't provide you with anything to back his story up. Not one single iota of evidence." *Toth*, 152 Wn. App. at 614. The prosecutor then elaborated on this point:

> Where's his brother? Where are any of the other people that were at that party? Why hasn't any of them come here to testify on his behalf? We don't even know that he was even at his brother's house. That's just his story. Maybe he was there. We don't know for sure whether or not [he] was there. But, what we don't have is any definitive evidence that he was there at all. And, he claims all he drank there was two beers and a swig of whiskey. We don't have anybody here to support that statement. Not one person.

8

*Toth,* 152 Wn. App. at 614. With this argument, the State implied that the defendant had a duty to present evidence, and in doing so committed prejudicial misconduct. *Toth,* 152 Wn. App. at 615.

We reject Milam's assertion that the statements at issue here are comparable to those in *Dixon* and *Toth.* Initially, the prosecutor simply observed, after describing the State's evidence, that there was no testimony that Milam did not have the cards in his possession. This observation did not imply that Milam was responsible for introducing such evidence; it only noted that none existed. The other comments were made after Milam emphasized the absence of the arresting officer's testimony and the discrepancies in the evidence regarding the specific block in which he was arrested. The prosecutor responded that this argument was irrelevant and added that in all of his argument, Milam did not deny possessing the cards.

These comments did not imply that Milam had a duty to present evidence. They simply noted that Milam had at no time denied possessing the stolen cards. This was arguably a legitimate inference from the evidence as well as a reasonable response to Milam's closing argument. *See Thorgerson,* 172 Wn.2d at 448 (prosecuting attorney has wide latitude to argue reasonable inferences from the evidence); *State v. Dykstra,* 127 Wn. App. 1, 8, 110 P.3d 758 (2005) (remarks in direct response to defense arguments are not improper as long as they do not go beyond what is necessary to respond to the argument).

But, even if the latter comments were improper, we do not see them as so flagrant or ill intentioned that an instruction could not have cured any resulting prejudice. Had Milam objected, the trial court could have reiterated that the State bears the burden of proof and that the defendant has no responsibility to present evidence. Such an instruction would have eliminated any possible confusion, and any remaining discussion of this claim of error is waived.

9

III.    SAG ISSUES

Milam raises several claims of error in his pro se SAG. He first argues that his arrest and prosecution was unlawful because he never committed any crime. Milam raised the same objection before trial, and the court rejected it after noting that the State had provided probable cause to support his arrest and the subsequent charges. Probable cause to arrest exists when an officer is aware of facts and circumstances that would lead a reasonable person to believe that a crime has been committed. *State v. Graham*, 130 Wn.2d 711, 724, 927 P.2d 227 (1996) (quoting *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986)). Once Milam displayed and tried to sell credit and debit cards, identification cards, and Social Security cards that belonged to other people, the officer had probable cause to arrest, and the State had probable cause to charge him with identity theft, trafficking in stolen property, and possession of stolen property. We reject this claim of error.

In a related argument, Milam argues that his Fourth Amendment rights were violated when he was arrested and searched without probable cause. As explained above, Noble had probable cause to arrest Milam after he offered Hall an array of credit and debit cards, identification cards, and Social Security cards belonging to other people. Because there was probable cause to arrest, the search incident to arrest was lawful. *State v. Moore*, 161 Wn.2d 880, 885, 169 P.3d 469 (2007).

Milam argues next that the trial court erred by denying his motion to suppress the evidence resulting from his arrest and search because Noble did not testify during the suppression hearing. Milam made the same objection before trial, and the court rejected it because Noble was not a necessary witness. Hall and James observed Milam's arrest and search and were able to describe what happened. We see no abuse of discretion in the trial court's

10

ruling where Noble's testimony would have been cumulative. *See State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985) (reviewing trial court's decision to deny motion to suppress for abuse of discretion).

Milam next contends that his exceptional sentences were unlawful because they were not based on a jury finding that aggravating factors existed and therefore violated the holding in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). The *Blakely* court held that a jury must determine any aggravating factor used to impose a sentence beyond the standard range, other than a prior conviction. 542 U.S. at 301. In response, the Washington Legislature amended the exceptional sentence provisions to explicitly authorize a trial court to impose an aggravated exceptional sentence without a finding of fact by a jury when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c); *State v. Chambers*, 176 Wn.2d 573, 585, 293 P.3d 1185 (2013). No factual finding is necessary to satisfy this aggravator because it relies only on criminal history and a calculation of the offender score. *Chambers*, 176 Wn.2d at 586. Consequently, Milam's sentencing challenge fails.

Milam raises several claims concerning the court's instructions to the jury. He contends that the trial court did not provide the parties with an opportunity to review the proposed instructions and to make objections, but the record shows otherwise. After Milam objected to all of the State's proposed instructions because they were "not in [his] favor," the court submitted its instructions to the parties for review, and neither party offered exceptions. 3 RP at 229.

Milam also asserts that the court's instructions did not properly inform the jury of the elements of the offenses charged. A challenge to a jury instruction may not be raised for the first time on appeal unless the instructional error is of constitutional magnitude. *State v. Johnston*,

11

100 Wn. App. 126, 134, 996 P.2d 629 (2000). Although failure to instruct on an essential element is an error of constitutional magnitude, Milam's argument is directed not at the court's instructions but at the prosecutor's alleged "instruction" that possession of the stolen property and contraband was sufficient to convict Milam on all counts. During closing argument, the prosecutor reviewed the elements of each offense for the jury and acknowledged its burden of proving each element. Although the prosecutor argued in conclusion that Milam's possession proved his guilt, the trial court instructed the jury to disregard any argument that was not supported by the law in its instructions. We presume that the jury followed the court's instructions and reject this claim of error. *State v. Russell*, 125 Wn.2d 24, 84, 882 P.2d 747 (1994).

Milam also claims that the instructions did not adequately inform the jury that it had to find separate and distinct conduct for each offense. The trial court informed the jury that a separate crime was charged in each count, that it had to decide each count separately, and that its verdict on one count should not control its verdict on any other count. The multiple charges resulted from the number of identities and cards at issue. *See State v. Ose*, 156 Wn.2d 140, 148, 124 P.3d 635 (2005) (legislature has defined the unit of prosecution for possessing stolen access device in RCW 9A.56.160(1)(c) as each access device in a defendant's possession); RCW 9.35.001 (unit of prosecution for identity theft is each individual unlawful use of any one person's means of identification). This claim of error also fails.

Finally, Milam asserts that the State refused his discovery requests and never provided him with any discovery. Milam made the same objection before trial, but the State had provided him with the discovery in its possession. When the court questioned Milam, he admitted that he had received the police reports and the incident reports. We need not consider this claim further.

12

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Hunt, J.

Worswick, C.J.

13