[No. 57669-6.   En Banc.   September 19, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL RICHARD BLAIR, *Petitioner.*

*Eric Broman* of *Washington Appellate Defender Association*, for petitioner.

*David S. McEachran, Prosecuting Attorney,* and *Mac D. Setter, Chief Criminal Deputy,* for respondent.

BRACHTENBACH, J. — Defendant Daniel R. Blair challenges his conviction for unlawful delivery of a controlled substance, arguing that the prosecutor committed reversible error by commenting, during closing argument, on defendant's failure to call particular witnesses. The Court of Appeals agreed that error occurred, but held that reversal was not required because defendant did not object and the comments were not so flagrant and ill intentioned that a curative instruction would not have neutralized their effect. *State v. Blair*, noted at 58 Wn. App. 1068 (1990). We conclude the prosecutor's comments did not constitute error and therefore reverse the Court of Appeals on this issue. We affirm defendant's conviction.

The charges against defendant resulted from an undercover police operation. An undercover police officer, "Lenny", had purchased cocaine from a certain woman on several occasions. On March 7, 1988, the woman contacted the detective through his telepager. The detective called the number displayed on the telepager and spoke with the woman. She told the detective that she knew where she could get an ounce of cocaine at a very low price, $1,400. The detective met the woman at a restaurant and gave her this amount in $50 bills, which he had previously photocopied. When the woman went to get the cocaine, she was followed by a police surveillance team to a street near defendant's rooming house in Bellingham. There was a brief break in the surveillance. The woman was then followed to her own home, where she stayed a short time, and then back to the restaurant where the detective was waiting and the transaction was completed.

The woman was arrested for delivery of a controlled substance. A search warrant was executed at her home very early on March 8, 1988. Some cocaine was recovered from a coat pocket, where she said it would be, and other drug use items and paraphernalia were recovered. She waived her constitutional rights and agreed to talk to law

enforcement officers. She also testified in support of a telephonic warrant to search defendant's room at the apartment house on Indian Street, where she said she obtained the cocaine sold to the detective.

Defendant was home when the warrant was executed that same night. During the search of defendant's room, sheets of paper with handwritten notations on them were seized. Defendant was searched, and the $1,400 in prerecorded bills was found in his pocket. Defendant also had over $10,000 additional in cash on him. The police found a small quantity of cocaine and some drug paraphernalia in defendant's room. The undercover detective noted that the telephone number displayed on a public phone in the rooming house was the same telephone number displayed on his telepager when the woman contacted him.

Defendant was arrested and charged with one count of possession (of the cocaine found in his room) and one count of unlawful delivery of a controlled substance (of the 1 ounce of cocaine delivered to the woman). During the course of his trial, the sheets of paper found in defendant's room were described by a prosecution witness as "crib" notes or sheets, of a kind commonly found at locations where drugs are sold and constituting a "crude business ledger." Report of Proceedings, at 162. Some of the sheets of paper contain lists of people, generally first names only, with numbers across from the names. Exhibit 8A.

The woman testified that she rode with her husband and parked near defendant's house. She testified she gave the money she received from the detective to "Dan" and received 1 ounce of cocaine. She then rode to her house, where she removed a half gram, then delivered the remainder to "Lenny".

Defendant testified, and admitted that a couple of the notations involved "drug dealings" but denied selling cocaine for a profit. He admitted to use of drugs on a daily basis, and to purchasing cocaine for his friends and provid-

ing it in social settings. He testified that most of the names and numbers on the sheets of paper represented personal loans and amounts owed him from card games. He testified that some notations related to travel arrangements, rent, and a medical appointment.

Defendant explained the large amount of cash he carried by testifying that he was receiving state money under an alcoholics assistance program, and he did not want the State to know about the large sum of cash he carried, which he claimed to have won gambling. He was also concerned that disclosure of the money might affect his pending application for supplemental social security.

Defendant denied selling the woman the 1 ounce of cocaine she delivered to the detective. He admitted that he agreed to use the $1,400 to buy cocaine for her, but had not done so at the time he was arrested. Defendant argued that the woman was a drug dealer, but he was not.

Defendant called one of the people listed on the slips of paper. This witness testified he had accompanied defendant to Reno and saw him with a large amount of money which defendant said he won. This witness also testified that references to him on the slips of paper concerned personal loans.

In closing argument, the prosecutor referred to the slips of paper found in defendant's room and said:

> Count the names up, and if he's telling you the truth, then he knew that all those people or those he could find, since he was arrested in March of '88, through today — better part of a year later — can clarify what he told you, and those people weren't brought in to tell you those were gambling debts for you to evaluate the contents of their testimony or their demeanor.

Report of Proceedings, at 396. The prosecutor also said:

> But ask yourselves that if this were true that these were gambling debts and you were in the defendant's shoes and you knew who all these people were and the police were saying, "These look like crib sheets. It's the stuff we see, all those aspects. Some of them we can't figure out, but these

> lists of names, dollars, and those amounts — quarters, eighths, whatever — that's what we see all the time," wouldn't the first thing that would cross your mind be to bring in the friends that he says he loaned money to, say, "Joe, I need you to come in"?
>
> And if Joe doesn't want to come in, he'd want to subpoena him and Sam and Fred and Paul and everybody else that's on that list and say, "Well, what's this for?" "Well, it's a gambling debt." And if he didn't do that, couldn't you infer that their answer wouldn't have been, "It was a loan. It's a gambling debt"?

Report of Proceedings, at 396-97.

Defense counsel did not object to this argument, but did tell the jury that defendant had no obligation to present any evidence. In rebuttal, the prosecutor remarked:

> Why not put or bring them all in and settle the matter?
>
> There's a reason for that, and the reason is simple. He couldn't bring those people in to say what he wanted them to say. He couldn't bring people in to say that, "Yeah, I bought dope from him, cocaine." If he could have, he would have; it's that simple.

Report of Proceedings, at 412-13.

Following his conviction on one count of possession and one count of delivery of a controlled substance, defendant appealed the conviction for delivery. He argued, among other things, that the prosecutor's remarks were improper. The Court of Appeals agreed, but held that error was not reversible. We granted defendant's petition for review.

Defendant argued to the Court of Appeals that the prosecutor's closing remarks regarding defendant's failure to call as witnesses persons whose names appeared on the slips of paper constituted prosecutorial misconduct for two reasons. First, defendant maintained, the remarks about failure to call witnesses in his behalf denied him a fair trial by shifting the burden of proof to him. Second, defendant argued that the prosecutor's remarks during rebuttal about defendant not being able to bring in witnesses who would say they bought dope from defendant constituted improper reference to facts not in evidence or improper reference to uncharged crimes.

The Court of Appeals held that the prosecutor's comments about defendant's failure to call the people whose names were on the pieces of paper constituted prosecutorial misconduct. The court relied upon *State v. Traweek*, 43 Wn. App. 99, 715 P.2d 1148, *review denied*, 106 Wn.2d 1007 (1986), and reasoned that the prosecutor's comments were improper because they carried the inference that the defendant had a duty to present evidence of his innocence if that evidence was available to him. *State v. Blair*, cause 23967-8-I (Aug. 23, 1990) slip op., at 13.

In *Traweek*, the defendant did not take the stand. During closing argument, the prosecutor remarked that defendant did not have to take the stand, but that did not mean that defense counsel could not put on other witnesses. Counsel continued by asking why there had not been any explanations by defense. The Court of Appeals first said that it was for the court, not the prosecutor, to instruct the jury on defendant's right not to testify. Second, the court concluded that a defendant has no duty to present any evidence, citing *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), and the prosecutor's comments improperly suggested that the defendant had a duty to call witnesses and prove his innocence. *Traweek*, at 107.

In analyzing the present case as it did, the Court of Appeals did not consider the opinion in *State v. Contreras*, 57 Wn. App. 471, 788 P.2d 1114, *review denied*, 115 Wn.2d 1014 (1990). That opinion was handed down after opening briefs were filed, and defendant attempted to distinguish it in a reply brief. *Contreras* concerns the "missing witness" doctrine.

■■ Under the "missing witness" or "empty chair" doctrine,

it has become a well established rule that where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to

> produce it, and, . . . he fails to do so, — the jury may draw an inference that it would be unfavorable to him.

*State v. Davis*, 73 Wn.2d 271, 276, 438 P.2d 185 (1968) (quoting *Wright v. Safeway Stores, Inc.*, 7 Wn.2d 341, 346, 109 P.2d 542, 135 A.L.R. 1367 (1941)). *See* 5 K. Tegland, Wash. Prac., *Evidence* § 85(4), at 247 (3d ed. 1989); 2 J. Wigmore, *Evidence* §§ 285-290 (1979).

The majority of jurisdictions permit the missing witness inference in criminal cases where the defense fails to call logical witnesses. *E.g.*, *State v. Greene*, 209 Conn. 458, 551 A.2d 1231, 80 A.L.R.4th 315 (1988); *State v. Wilkins*, 215 Kan. 145, 523 P.2d 728 (1974); *Commonwealth v. Cancel*, 394 Mass. 567, 575, 476 N.E.2d 610 (1985) (citing *Commonwealth v. Domanski*, 332 Mass. 66, 70-71, 123 N.E.2d 368 (1954); *Commonwealth v. Peoples Express Co.*, 201 Mass. 564, 581, 88 N.E. 420 (1909)); *State v. Ennis*, 99 N.M. 117, 654 P.2d 570 (Ct. App.), *cert. denied*, 99 N.M. 148 (1982); *Assadollah v. State*, 632 P.2d 1215 (Okla. Crim. App. 1981); *Commonwealth v. Rohach*, 344 Pa. Super. 229, 496 A.2d 768 (1985) (but exception applied); *State v. Crank*, 721 S.W.2d 264 (Tenn. Crim. App. 1986); *Cooper v. State*, 783 S.W.2d 235 (Tex. Ct. App. 1989); *King v. State*, 780 P.2d 943 (Wyo. 1989). In 1893 the United States Supreme Court described it in a criminal case where a defendant did not call a witness. *Graves v. United States*, 150 U.S. 118, 37 L. Ed. 1021, 14 S. Ct. 40 (1893) (although reference to uncalled witness improper because of marital privilege); *but see State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974); *State v. Taylor*, 581 A.2d 1037 (R.I. 1990).

■ When faced with a situation similar to that in this case, however, this court found that prosecutorial misconduct occurred. In *State v. Fowler*, 114 Wn.2d 59, 785 P.2d 808 (1990), the defendant was convicted of second degree assault while armed with a deadly weapon and a firearm. His conviction arose out of a confrontation which resulted

when three occupants of another vehicle tried to pass defendant's car. Defendant took the stand and gave his version of events; all three occupants of the other car also testified. The prosecutor remarked in closing argument that the defense had the power to subpoena witnesses, that all three occupants of the second vehicle testified there was a passenger in defendant's car, and then said that if defendant's story was true, and if he had a friend in his car who presumably observed the events, where was that person? This court held that the prosecutor committed error. *Fowler*, at 66. The court did not address the missing witness doctrine, nor did it analyze the circumstances of the case within that doctrine. To the extent *Fowler* might be read as inconsistent with the analysis herein, it is disapproved.

The Court of Appeals has found the missing witness doctrine applicable where the inference was drawn based on defendant's failure to call a particular witness. *See State v. Contreras*, 57 Wn. App. 471, 788 P.2d 1114, *review denied*, 115 Wn.2d 1014 (1990); *State v. Cozza*, 19 Wn. App. 623, 627, 576 P.2d 1336 (1978); *State v. Green*, 2 Wn. App. 57, 69-70, 466 P.2d 193 (1970). In *Contreras*, at 476, the court held that it is permissible for the prosecutor to comment on the defendant's failure to call a witness provided that it is clear the defendant was able to produce the witness and the defendant's testimony unequivocally implies that the absent witness could corroborate his theory of the case.

The recent opinion in *State v. Barrow*, 60 Wn. App. 869, 872-73, 809 P.2d 209 (1991) lists a number of cases permitting prosecutorial comment on defendant's failure to produce evidence, reasoning that, despite the analysis in *Traweek* (upon which the Court of Appeals relied here), in limited situations such comments are permissible. The court in *Barrow* distinguished *Traweek* on the basis that there the defendant did not testify nor did he put on a

defense. The court in *Barrow* therefore rejected defendant's argument that the prosecutor's comments impermissibly shifted the burden of proof.

We agree with the majority of the courts addressing this issue and hold under the circumstances of this case that the missing witness doctrine applies and that under the doctrine no error occurred.[1] There are, however, limitations on the doctrine which are particularly important when a criminal defendant's failure to call particular witnesses is the subject of prosecutorial comment.

■ Washington courts have said, in the context of failure of the State to call certain witnesses, that the inference arises "only where, under all the circumstances of the case, such unexplained failure to call the witnesses creates a suspicion that there has been a willful attempt to withhold competent testimony." *State v. Baker*, 56 Wn.2d 846, 859-60, 355 P.2d 806 (1960); *see State v. Nelson*, 63 Wn.2d 188, 191-92, 386 P.2d 142 (1963). Defendant has argued that this requirement is not satisfied here because there is no evidence of willful misconduct.

However, in a later case, *State v. Davis, supra*, at 279-80, the requirement was explained as not meaning that in order to obtain the benefit of the missing witness rule in a criminal case one must prove facts sufficient to establish a deliberate suppression of evidence. Instead, the requirement means that

> one must establish such circumstances which would indicate, as a matter of reasonable probability, that the prosecution [the party against whom the missing witness rule was sought to be applied in the case] would not knowingly fail to call the witness in question unless the witness's testimony would be damaging. In other words, "the inference is based, not on the bare fact that a particular witness is not produced as a witness, but on his non-production *when it would be natural for him to produce the witness if the facts known by him had been favorable*."

---

[1] To the extent WPIC 5.20 suggests the missing witness doctrine applies only where the State fails to call particular witnesses, it is inconsistent with this opinion.

*Davis*, at 280 (quoting 2 J. Wigmore § 286). Given this explanation of the requirement, there is little merit to defendant's claim that the doctrine does not apply in the absence of a showing of willful misconduct.

■ A second limitation on the rule is that the inference is not permitted when the witness is unimportant, or the testimony would be cumulative. *Davis*, at 278; 2 K. Tegland § 85(4), at 248; 2 J. Wigmore § 287. The importance of the witness's testimony depends upon the facts of the case. *Davis*, at 278. There is no doubt that the persons named on the slips of paper found in defendant's apartment are the kind of witnesses contemplated by the rule.

If a witness's absence can be satisfactorily explained, no inference is permitted. *E.g., State v. Lopez*, 29 Wn. App. 836, 631 P.2d 420 (1981) (missing witnesses were transients who left town and could not be located); *State v. Richards*, 3 Wn. App. 382, 475 P.2d 313 (1970). Defendant has maintained that the State made no showing it attempted to establish any reason for the absence of the witness. However, it is the party against whom the rule would operate who is entitled to explain the witness's absence and avoid operation of the inference. 2 J. Wigmore § 290, at 216.

If a witness is not competent to testify, or some privilege applies so that the witness's testimony is protected, then the inference is not proper. *E.g., State v. Charlton*, 90 Wn.2d 657, 585 P.2d 142 (1978) (marital privilege); *State v. Torres*, 16 Wn. App. 254, 259-61, 554 P.2d 1069 (1976) (same); *United States v. Saa*, 859 F.2d 1067 (2d Cir. 1988) (confidential informant), *cert. denied*, 489 U.S. 1089 (1989). There is no indication that any person on the list would be an incompetent witness or one whose testimony is privileged.

In a similar vein, it is possible that a witness's testimony, if favorable to the party who failed to call the witness, would necessarily be self-incriminatory. Some courts therefore hold that the inference is not available if

the witness's testimony would necessarily be self-incriminatory if favorable to the party who could have called the witness; however, the fact that the testimony might be self-incriminatory if *adverse to the party not calling the witness* does not preclude use of the missing witness inference. *United States v. Pitts*, 918 F.2d 197 (D.C. Cir. 1990). Here, there is no indication that any of the uncalled witness's testimony, if *favorable* to the defense, would be self-incriminatory.

Most courts hold that the doctrine does not apply if the uncalled witness is equally available to the parties. *E.g.*, *United States v. Anchondo-Sandoval*, 910 F.2d 1234 (5th Cir. 1990). This is the accepted rule in this state. *State v. Davis*, 73 Wn.2d 271, 276-78, 438 P.2d 185 (1968). This question of availability does not mean that the witness is in court or is subject to the subpoena power.

> For a witness to be "available" to one party to an action, there must have been such a community of interest between the party and the witness, or the party must have so superior an opportunity for knowledge of a witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that his testimony would have been damaging.

*Davis*, at 277; *accord, United States v. MMR Corp. (LA)*, 907 F.2d 489 (5th Cir. 1990). The rationale for this requirement is that a party will likely call as a witness one who is bound to him by ties of affection or interest unless the testimony will be adverse, and that a party with a close connection to a potential witness will be more likely to determine in advance what the testimony would be. *Davis*, at 277 (quoting 5 A.L.R.2d 893, 895-96 (1949)).

Here, defendant testified that at the time he was arrested he could have located the people named on the list. His relationship with them was a business relationship or a personal one in that he claimed the people owed him money on personal loans or gambling debts from card games. Many of the names were first names only, thus known to defendant alone.

Defendant has argued, however, that the State could have investigated and tried to locate the witnesses itself, but it did not demonstrate any attempt to do so, nor did the State offer any proof it had tried to identify or subpoena the witnesses. The requirement, however, is, as one court has put it, that the party seeking benefit of the inference must show the "absent witness was peculiarly within the other party's power to produce". *United States v. Williams*, 739 F.2d 297, 299 (7th Cir. 1984).

Here, the prosecutor pointed out in his closing remarks that the defendant was the only one who could reasonably determine who the people on the slips were, given the first names listed. Report of Proceedings, at 395-96. The prosecutor also pointed out that defendant could locate the people when he was arrested. Report of Proceedings, at 396. Defendant's own testimony supported these remarks. Thus, the prosecutor showed the peculiar availability of the witnesses to the defense within the context of the missing witness doctrine.

Of course, the missing witness doctrine is improper if the prosecutor's comments infringe on the defendant's constitutional rights, for example, the right to remain silent.

We do not agree, however, that any comment referring to a defendant's failure to produce witnesses is an impermissible shifting of the burden of proof. To the extent *State v. Traweek*, 43 Wn. App. 99, 715 P.2d 1148, *review denied*, 106 Wn.2d 1007 (1986) indicates that the State may never comment on the defendant's failure to call witnesses or produce evidence, it is overly broad. It is disapproved to the extent it is inconsistent with our analysis herein. Here, nothing in the prosecutor's comments said that the defendant had to present any proof on the question of his innocence. The prosecutor was entitled to argue the reasonable inference from the evidence presented. Defendant testified. In so doing, he waived his right to remain silent. He specifically testified about the notations on the slips of paper. He testified he knew, at the time he

was arrested, how to locate the people listed on the slips. Only their first names were listed, and according to his testimony he had a business or personal relationship with the people listed. Under these circumstances, the prosecutor's comments about defendant's failure to call the witnesses were not error.

Moreover, we note the trial court properly instructed the jury that counsel's remarks are not evidence, instruction 1, Clerk's Papers, at 15; and that the State has the burden of proof and the defendant is presumed innocent, instruction 2, Clerk's Papers, at 17.

There is no merit to defendant's contention that some of the prosecutor's comments constituted impermissible comment on facts not in evidence or impermissible evidence of uncharged crimes. A police officer testified for the State that the slips of paper constituted "crib sheets" as "a crude business ledger" of drug deals. This evidence carried the inference that notations on the papers represented specific drug transactions. The prosecutor did no more than argue this inference in the context of the missing witness rule. The inference was the one which the doctrine permits.

Finally, defendant maintains that credibility was central in this case, and therefore reversal is required due to the prejudicial effect of the prosecutor's remarks. This argument is premised on the conclusion that the prosecutor's comments were erroneous. As we have explained, the comments did not constitute error. The missing witness inference, if permissible in light of the limitations discussed in this opinion, is not impermissible simply because credibility is a central issue.

We do not rule out the possibility that there may be circumstances where comments by a prosecutor may in fact constitute prosecutorial misconduct by raising the inference that defendant has the burden of proof on an issue. This is not that case.

Defendant's conviction is affirmed.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.