FILED
COURT OF APPEALS
DIVISION II

2015 FEB 10 AM 8:56

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45081-0-II |
| Respondent, | |
| v. | |
| CORY SUNDBERG, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Cory Sundberg appeals his conviction for unlawful possession of a controlled substance. He argues that the prosecutor committed misconduct by shifting the burden of proof in closing argument, and by arguing that Sundberg should have called a witness. Holding that the prosecutor committed misconduct, we reverse Sundberg's conviction and remand.[1]

## FACTS

### A. *Arrest*

Sundberg lived with his elderly foster father, Wes Rider, and worked on maintenance projects around their mobile home. Sundberg said he employed a neighbor named Paul Wood to help with maintenance projects. To protect his clothing, Wood borrowed a pair of Sundberg's

---

[1] Sundberg also argues that the trial court erred in denying his motion for a new trial. Because we reverse Sundberg's conviction on other grounds, we do not address this issue.

bib overalls to perform work under a shed. The day before Sundberg's arrest, Wood left the jobsite and did not return the following day or any day thereafter.

A law enforcement officer came to the mobile home and arrested Sundberg on an outstanding warrant. On the day of his arrest, Sundberg was pressure washing the mobile home and was wearing the overalls he had previously lent to Wood.

During the arrest, Sundberg requested permission to change clothing. Sundberg said the reason for the request was that his overalls were wet up to the knee from power washing, and that the officers had disconnected the shoulder straps of the overalls, leaving them hanging below his waist. The arresting officer declined Sundberg's request to change clothing.

Officers performed an inventory search of Sundberg's clothing at the jail, which revealed a small "baggie" of methamphetamine in the bib pocket of his overalls. The State charged Sundberg in an amended information with one count of unlawful possession of a controlled substance, methamphetamine.[2]

B.    *Trial*

Sundberg argued an unwitting possession defense, claiming he did not know there was methamphetamine in the overalls.[3] The methamphetamine was in a narrow pocket on the bib of

---

[2] RCW 69.50.4013(1).

[3] The jury instructions included an instruction on unwitting possession, which read: "A person is not guilty of possession of a controlled substance if the possession is unwitting. Possession of a controlled substance is unwitting if a person did not know that the substance was in his possession, or did not know the nature of the substance. The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly.

the overalls, which Sundberg testified that he did not use. He argued that it was impossible to know whether Sundberg's employee Paul Wood, who had borrowed the overalls, was the true source of the methamphetamine, but that in any event Sundberg did not know it was there.

In closing argument, Sundberg argued that it was reasonable to believe that Sundberg did not know about the methamphetamine in his bib pocket, because of the narrow width of the pocket and the small size of the "baggie" of methamphetamine. He also reminded the jury that Wood had been helping Sundberg, and, "We know very little about Paul Wood." Verbatim Report of Proceedings (VRP) at 184. However, he did not explicitly argue that Wood had put the methamphetamine in the overalls.

In rebuttal closing, the State argued that Sundberg's story about Wood borrowing the overalls did not make sense: it was summer, so Wood would not have needed the extra layer of clothing for warmth. Nor should someone doing manual labor need to borrow his employer's work clothes. The State also argued that it did not make sense that a methamphetamine addict would leave methamphetamine in someone else's clothing. The State reminded the jury of the State's burden to prove each element beyond a reasonable doubt. Then it argued that Sundberg had not carried his burden of proving the affirmative defense of unwitting possession by a preponderance of the evidence:

> Now it's the defendant's burden — and this is the reason I asked the defendant these questions. I asked him okay, tell us about Paul Wood; describe him for us, do you know him, how do you know him. He says he sees him about twice a

---

Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true." CP at 93.

3

week. He says he can get a hold of him. Why isn't he here testifying? It's their burden. He's not here. There's no evidence . . . that he . . . even exists.

VRP at 195. Sundberg objected. The court overruled the objection without comment. The State continued, arguing:

Sundberg is also inherently biased. He has a stake in the outcome. That gives him bias to lie. His testimony was obviously self-serving. It was obviously designed to tell a story to corroborate his defense. And again, it was his burden. *He didn't bring in Paul Wood.*

VRP at 195-96 (emphasis added).

Outside the presence of the jury, Sundberg requested an instruction telling the jury to disregard the State's argument that Sundberg should have called Paul Wood to testify. The court denied the request for a curative instruction, finding that there was neither prosecutorial misconduct nor basis in the case law for a curative instruction.

C.     *Motion for New Trial*

The jury found Sundberg guilty of unlawful possession of a controlled substance. Sundberg moved for a new trial based on prosecutorial misconduct. The trial court denied Sundberg's motion for a new trial, finding that there had been no prosecutorial misconduct.

## ANALYSIS

Sundberg argues that the prosecutor's closing argument constituted misconduct because it shifted the burden of proof by misapplying the missing witness doctrine. We disagree that the prosecutor's argument shifted the burden of proof, because Sundberg had the burden of proving his affirmative defense of unwitting possession. However, we agree that the prosecutor's argument improperly invoking the missing witness doctrine constituted misconduct.

4

## I. STANDARD OF REVIEW

To prevail on a claim of prosecutorial misconduct the defendant must establish that the prosecutor's conduct was both improper and prejudicial. *State v. Finch*, 137 Wn.2d 792, 839, 975 P.2d 967 (1999) (plurality opinion). The defendant must demonstrate a substantial likelihood that the misconduct affected the verdict in order to receive a new trial. 137 Wn.2d at 839.

We review a prosecutor's allegedly improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). A prosecutor has wide latitude in making arguments to the jury and may draw reasonable inferences from the evidence. *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).

## II. NO BURDEN SHIFTING

The State generally may not comment on the defendant's lack of evidence, because the defendant has no duty to present evidence. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003); *State v. Fleming*, 83 Wn. App. 209, 215, 921 P.2d 1076 (1996). It is misconduct to imply that the defendant is required to provide evidence, or that the jury should convict the defendant because he has presented little evidence. *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009). But the State is entitled to show that an exculpatory theory the defendant raises lacks evidentiary support. A "prosecutor can question a defendant's failure to provide corroborative evidence if the defendant testified about an exculpatory theory that could have

been corroborated by an available witness." *State v. Barrow*, 60 Wn. App. 869, 872, 809 P.2d 209 (1991).

Defendants are required to prove affirmative defenses by a preponderance of the evidence. *State v. Lively*, 130 Wn.2d 1, 13, 921 P.2d 1035 (1996). It does not shift the burden of proof to require a defendant who raises the unwitting possession defense to prove that defense by a preponderance of the evidence. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004).

Here, Sundberg claims that the State's rebuttal argument shifted the burden of proof. But Sundberg had the burden of proving his affirmative defense of unwitting possession by a preponderance of the evidence. *Bradshaw*, 152 Wn.2d at 538. Thus, his argument fails.

### III. PROSECUTOR VIOLATED MISSING WITNESS DOCTRINE

A. *Missing Witness Doctrine Inapplicable*

In general, the State may not comment on the defendant's lack of evidence, because the defendant has no duty to present evidence. *Cheatam*, 150 Wn.2d at 652. The missing witness doctrine is an exception: it applies where a party has failed to produce evidence within its control, including the testimony of a potential witness. *State v. Blair*, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991). Where it applies, the doctrine permits the jury to infer that the missing evidence or testimony would have been unfavorable to the party who failed to produce it. 117 Wn.2d at 485-86. Therefore, it permits a prosecutor to comment on the defense's failure to produce exculpatory evidence in limited circumstances. "There are, however, limitations on the doctrine which are particularly important when a criminal defendant's failure to call particular witnesses is the subject of prosecutorial comment." 117 Wn.2d at 488.

6

The missing witness doctrine allows the State to comment on a criminal defendant's failure to produce a witness only where: (1) the absent witness is particularly within the defense's ability to produce, (2) the missing testimony is not merely cumulative, (3) the witness's absence is not otherwise explained, (4) the witness is not incompetent or his testimony privileged, and (5) the testimony does not infringe on the defendant's constitutional rights. *Cheatam*, 150 Wn.2d at 652-53. The doctrine does not apply where the missing witness's testimony, if favorable to the party who would naturally have called the witness, would necessarily be self-incriminatory. *Blair*, 117 Wn.2d at 490-91. Finally, the State may comment on the defendant's failure to call a witness only where the defendant has unequivocally implied that the missing witness would have corroborated his theory of the case. *State v. Contreras*, 57 Wn. App. 471, 476, 788 P.2d 1114 (1990).

Here, the missing witness doctrine did not apply for two reasons. First, Wood's testimony could only have been favorable to Sundberg if Wood testified that he was the source of the methamphetamine. Said another way, Wood's testimony would have been favorable to Sundberg only if Wood testified that he committed the crime of unlawful possession of a controlled substance by possessing the methamphetamine and placing it in Sundberg's pocket. Thus, his testimony would have been necessarily self-incriminatory and privileged. *Blair*, 117 Wn.2d at 490-91; *State v. Dixon*, 150 Wn. App. 46, 55, 207 P.3d 459 (2009). Second, Sundberg had not unequivocally implied that Wood would have corroborated his testimony. *Contreras*, 57 Wn. App. at 476. Sundberg explicitly said it was impossible to know whether Wood was the

7

source of the methamphetamine. For these reasons, the missing witness doctrine did not apply and the prosecutor was not entitled to invoke it.

The prosecutor's argument called for the jury to infer that Wood would have contradicted Sundberg's defense if Sundberg had called him. The prosecutor said that Sundberg "says he sees [Wood] about twice a week. He says he can get a hold of him. Why isn't [Wood] here testifying? It's their burden. He's not here." VRP at 195. This argument implied that Sundberg would have called Wood had his testimony favored Sundberg. The prosecutor continued, arguing that Sundberg "is also inherently biased. He has a stake in the outcome. That gives him bias to lie. His testimony was obviously self-serving. It was obviously designed to tell a story to corroborate his defense. And again, it was his burden. He didn't bring in Paul Wood." VRP at 195-96. With this argument, the prosecutor implied that Sundberg's biased testimony would not have been corroborated by Wood's testimony.

Taken as a whole, this argument improperly invoked the missing witness doctrine. It asked the jury to infer that the missing testimony would have been unfavorable to Sundberg. *Blair*, 117 Wn.2d at 485-86. The prosecutor was not entitled to argue this inference. *Blair*, 117 Wn.2d at 489-91; *Dixon*, 150 Wn. App. at 55; *Contreras*, 57 Wn. App. at 476.

B.      *Violation of Missing Witness Doctrine Constituted Misconduct*

A prosecutor commits misconduct by violating the missing witness doctrine. *State v. Carter*, 74 Wn. App. 320, 332, 875 P.2d 1 (1994). To prevail on a claim of prosecutorial misconduct where, as here, the appellant objected to the conduct, an appellant must show that the conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653

8

(2012). Prejudice in this context is a substantial likelihood that the misconduct affected the verdict. *Finch*, 137 Wn.2d at 839. Even improper prosecutorial remarks in direct response to defense counsel's arguments are not grounds for reversal where they do not go beyond what is necessary to respond to the defense, and neither bring before the jury matters not in the record, nor create incurable prejudice. *State v. Francisco*, 148 Wn. App. 168, 178-79, 199 P.3d 478 (2009). Here, the prosecutor's invocation of the missing witness doctrine was improper. *See Carter*, 74 Wn. App. at 332. The prosecutor's argument was not in direct response to Sundberg's argument. *Francisco*, 148 Wn. App. at 178-79.

In addition, there is a substantial likelihood that the improper invocation of the missing witness doctrine affected the verdict. The State presented strong evidence that Sundberg possessed methamphetamine: an inventory search of the overalls he wore revealed methamphetamine. But Sundberg's possession of the methamphetamine was not the issue in dispute, because Sundberg argued the affirmative defense of unwitting possession. This defense relied heavily on Sundberg's testimony that Paul Wood had worn the overalls in the days prior to Sundberg's arrest, suggesting that the overalls had been out of his control and he did not know they contained methamphetamine. Despite the fact that Wood was not an available witness under the missing witness doctrine, the prosecutor improperly urged the jury to infer that Wood would contradict Sundberg's defense. This suggestion so fundamentally compromised Sundberg's unwitting possession defense that there is a substantial likelihood the prosecutor's misconduct affected the verdict. There is a substantial likelihood the jury rejected Sundberg's unwitting possession defense based on the improper inference the prosecutor invoked.

No. 45081-0-II

Because the prosecutor committed misconduct by improperly invoking the missing witness doctrine, and because there is a substantial likelihood that this improper argument affected the verdict, we reverse Sundberg's conviction and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Melnick, J.

10