## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                    )
         Respondent, )
                    )
      v. )
                    )
VICTOR ANDREW MASON, )
                    )
         Appellant. )
                    )

DIVISION ONE

No. 77043-8-I

ORDER GRANTING MOTION
FOR RECONSIDERATION,
WITHDRAWING OPINION,
AND SUBSTITUTING OPINION

The appellant, Victor Andrew Mason, has filed a motion for reconsideration of the opinion filed on September 17, 2018. The State has filed a motion to concede error regarding appellant's motion to reconsider. The court has determined that appellant's motion for reconsideration should be granted and that the opinion filed on September 17, 2018 shall be withdrawn and a substitute unpublished opinion be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; it is further

ORDERED that the opinion filed on September 17, 2018 is withdrawn and a substitute unpublished opinion shall be filed.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 77043-8-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| VICTOR ANDREW MASON, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 29, 2018 |
| | ) | |

DWYER, J. — A jury convicted Victor Mason of one count of robbery in the second degree. Mason appeals, contending that the trial court erred in declining to give a missing evidence instruction. We remand to the trial court to strike the imposition of the $100 DNA collection fee. In all other respects, we affirm.

I

On June 22, 2016, Christian Bird was working as a loss prevention officer at a Rite Aid drugstore in north Seattle. Bird observed a man, later identified as Mason, take a package of toothbrushes and two water squirt guns, and conceal them in his pants. Mason also took a Hawaiian shirt and put it on over his clothes. Mason walked out of the store without paying for the items.

Bird and his supervisor, Abraham Henriquez, followed Mason out of the store. Bird identified himself to Mason as a loss prevention officer. Mason responded by punching Bird in the face. Mason then grabbed his bike and appeared as though he was going to hit Bird and Henriquez with it. Bird and

Henriquez wrestled Mason to the ground and restrained him. Henriquez informed Mason that he was going to release him "but he had to promise to calm down and not hurt us if I let him go." As soon as Henriquez released Mason, Mason picked up Henriquez and threw him into a large ceramic flower pot.

Jack Wirta, the store manager, called 911. Wirta saw items scattered on the sidewalk, including a package of Rite Aid brand toothbrushes, two water squirt guns and a ripped Hawaiian shirt. Wirta identified all of the items as Rite Aid merchandise. In particular, Wirta recognized the Hawaiian shirt as a pattern that Rite Aid carried at that time.

The State charged Mason with robbery in the second degree. At trial, Wirta testified that Rite Aid had security cameras aimed at the entrance to the store as well as throughout the inside of the store. He testified that security camera footage was retained for 90 days before it was destroyed. Law enforcement officers obtained security camera footage showing Mason leaving the store wearing the Hawaiian shirt and assaulting Bird and Henriquez. The State presented this footage at trial. The officers did not request any other security camera footage from the incident.

Mason requested that the trial court give a "missing evidence" instruction. He argued that because the State did not present security camera footage showing what he was wearing when he entered the store, or showing him taking items in the store, the jury should be permitted to infer that the missing security

2

No. 77043-8-I/3

camera footage would have been favorable to him. Mason proposed the following instruction, based on the pattern "missing witness" instruction.[1]

> If the State or one of its agents could have produced evidence at trial and the evidence is not produced, you may infer that the evidence would have been unfavorable to the State. You may draw this inference only if you find that:
>
> (1) The evidence was within the control of, or peculiarly available to, that party;
>
> (2) The issue on which the evidence concerns is an issue of fundamental importance, rather than one that is trivial or insignificant;
>
> (3) As a matter of reasonable probability, it appears naturally in the interest of the State to introduce the evidence;
>
> (4) There is no satisfactory explanation of why the State did not introduce the evidence; and
>
> (5) The inference is reasonable in light of all the circumstances.

The trial court declined to give the instruction.

> Well, yeah, I'm not going to give this one. This – this particular instruction only applies to witnesses. And the comments instructed to be – that it be given sparingly.
>
> The burden of proof instruction regarding, you know, evidence or lack of evidence – well, both the burden of proof and consideration of evidence and lack of evidence permits you to argue with regard to the videos.

In closing argument, Mason argued that the evidence was insufficient to prove he stole the Hawaiian shirt because security camera footage from outside the store could have shown that he entered the store wearing the shirt.

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS CRIMINAL 5.20 (4th ed. 2016) (WPIC).

3

> But you've seen no video of Victor putting on a Hawaiian shirt. You didn't see any video of Victor not walking in wearing a Hawaiian shirt. That would clearly establish that he put it [on] inside the store, but you don't have that video.

Mason also argued that the evidence was insufficient because the State did not provide security camera footage from inside the store showing him take the other items. The jury found Mason guilty as charged. Mason appeals.

## II

Mason argues that the trial court erred in declining to give the missing evidence instruction. "[A] trial court's refusal to give an instruction [to the jury] based upon a ruling of law is reviewed de novo." State v. Walker, 136 Wn.2d 767, 772, 966 P.2d 883 (1998).[2]

A missing evidence instruction derives from the missing witness doctrine. It is a permissive inference instruction that informs the jury that "'where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it,'" and that party fails to do so, the jury may draw an adverse inference from that failure. State v. Blair, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991) (quoting State v. Davis, 73 Wn.2d 271, 276, 438 P.2d 185 (1968)). The instruction is not permitted where the evidence is unimportant, or merely cumulative, or where its absence can be satisfactorily explained. Blair, 117 Wn.2d at 489.

---

[2] Mason contends that the proper standard of review is abuse of discretion, because the trial court "refused to exercise discretion based on a mistaken understanding of the existence of its own discretion under the law." Reply Br. of Appellant at 2. We need not address this issue because the error was harmless under either standard of review.

The trial court determined that Mason was not entitled to the proposed instruction because WPIC 5.20 applies only to witnesses, not physical evidence. While the pattern instruction refers only to witnesses, as the State appropriately concedes, "there is authority suggesting the instruction is within a broad spectrum of sanctions available to trial courts when there has been government mismanagement."[3]

However, errors involving a jury instruction are harmless if this court concludes beyond a reasonable doubt "'that the jury verdict would have been the same absent the error.'" State v. Brown, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting Neder v. United States, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). We make this determination viewing the record as a whole. Brown, 147 Wn.2d at 341.

Here, the facts of the case did not support a missing evidence instruction. Both Bird and Henriquez testified that the security cameras inside the store did not cover the area where Mason took merchandise.[4] And it was irrelevant whether Mason stole the Hawaiian shirt because the evidence was uncontroverted that he stole other items, including toothbrushes and water squirt

---

[3] Br. of Resp't at 6.

[4] Henriquez testified as follows:

Q And there are multiple cameras inside of the store?
A Correct.
Q Cameras that record the floor?
A It's limited. So we don't – I mean, the only angles that we have wouldn't have covered the areas which Mr. Mason shop – shopped in.

Bird corroborated Henriquez's testimony:

Q You didn't offer recordings from any other cameras from inside the store?
A Well, I got the cameras that he was on. I mean Rite-Aid doesn't have as many cameras as you probably think.

guns.[5] We agree with the State that, even if the trial court's ruling was erroneous, such error was harmless.[6]

Mason challenges the trial court's imposition of the $100 DNA collection fee, based on recent amendments to RCW 43.43.7541 eliminating the DNA collection fee if a defendant's DNA has been collected because of a prior conviction. See State v. Ramirez, __ Wn.2d __, 426 P.3d 714, 721 (2018). The State concedes that Ramirez entitles Mason to amendment of the judgment and sentence. We remand for the trial court to strike the DNA collection fee from the judgment and sentence. In all other respects, we affirm.

WE CONCUR:

---

[5] No evidence supports the notion that Mason walked into the store in possession of toothbrushes of the type sold by Rite Aid, still in their original packaging.

[6] In addition, had the trial court applied the appropriate test, the instruction would not have been given. The concern underlying the instruction is government mismanagement. See State v. James, 26 Wn. App. 522, 524, 614 P.2d 207 (1980). The instruction should not be given when the absence of the evidence is satisfactorily explained. State v. Reed, 168 Wn. App. 553, 571, 278 P.3d 203 (2012). Here, the videos were routinely destroyed by Rite Aid, a private party, 90 days after the event. As no one had requested them, Rite Aid acted routinely. Thus, the videos were not available to be shown at trial. There was no evidence or allegation that the requesters or the State took any affirmative act to destroy the videos.