IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  37079-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK J. CROSSGUNS, Sr., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — We previously reversed the conviction of Patrick Crossguns for second degree rape of a child and second degree child molestation because the prosecution committed misconduct when the State argued, during closing, that the jury must resolve conflicts in testimony.  The Washington Supreme Court accepted review and ruled that, despite the prosecution engaging in misconduct, Crossguns suffered no reversible prejudice from this one act of prosecutorial misconduct.  The Supreme Court remanded to this court the question of whether the State committed additional misconduct when allegedly misstating the missing witness doctrine and, if so, whether cumulative

error deprived Crossguns of a fair trial. We conclude no additional misconduct transpired and affirm the convictions of Crossguns.

FACTS

This appeal arises from the relationship between appellant Patrick Crossguns and his daughter, Rhonda, a pseudonym, born September 11, 2002. Crossguns and Rhonda lived with Crossguns' wife and Rhonda's stepmother, Marsha Matte. *State v. Crossguns*, No. 37079-8-III, slip op. at 1-2 (Wash. Ct. App. Dec. 8, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/370798.pdf. Crossguns and Matte begot two children, and Matte brought three additional children to the marriage. *State v. Crossguns*, No. 37079-8-III, slip op. at 2.

In 2015, when Rhonda was twelve years old, Patrick Crossguns inappropriately touched her for the first time while the two traveled from Spokane to Montana. *State v. Crossguns*, No. 37079-8-III, slip op. at 2. Crossguns stroked Rhonda's thigh and touched her shorts over her vagina. *State v. Crossguns*, No. 37079-8-III, slip op. at 2. During the stay in Montana, Crossguns digitally penetrated Rhonda's vagina, despite her repeated requests that he stop. *State v. Crossguns*, No. 37079-8-III, slip op. at 2.

Thereafter Patrick Crossguns occasionally touched Rhonda's private area when driving a car and while she was sole passenger. *State v. Crossguns*, No. 37079-8-III, slip op. at 3. At night, Crossguns frequently entered Rhonda's basement bedroom that she shared with her sister Cathy. *State v. Crossguns*, No. 37079-8-III, slip op. at 3.

2

According to Rhonda, Cathy, a heavy sleeper, did not awaken on these occasions. *State v. Crossguns*, No. 37079-8-III, slip op. at 3.

Patrick Crossguns' stepson and Marsha Matte's son, Bob, heard Crossguns descending stairs to the basement and once viewed the stepfather exiting Rhonda's and Cathy's bedroom. *State v. Crossguns*, No. 37079-8-III, slip op. at 3. Bob then accused Crossguns of molesting Rhonda. *State v. Crossguns*, No. 37079-8-III, slip op. at 3. The accusation resulted in a physical altercation, during which Bob broke Crossguns' jawbone. *State v. Crossguns*, No. 37079-8-III, slip op. at 3. Rhonda's brother, Tim, observed Crossguns placing his hands on Rhonda's lower back when hugging her, and, according to Tim, the father did not hug any of the siblings in this manner. *State v. Crossguns*, No. 37079-8-III, slip op. at 3.

In April or May 2016, Patrick Crossguns forced his hands down Rhonda's pants. *State v. Crossguns*, No. 37079-8-III, slip op. at 4. We do not know the number of times or the locations of the assaults. Rhonda once struggled to free herself of Crossguns' grasp. *State v. Crossguns*, No. 37079-8-III, slip op. at 4. Crossguns informed her that, if she ceased struggling, he would cease molesting her for one month. *State v. Crossguns*, No. 37079-8-III, slip op. at 4. After Rhonda continued to struggle, Crossguns promised not to fondle her for two months and, eventually, he promised a three months' respite. *State v. Crossguns*, No. 37079-8-III, slip op. at 4. Based on the three-month promise,

3

Rhonda relented.  *State v. Crossguns*, No. 37079-8-III, slip op. at 4.  Crossguns digitally

penetrated Rhonda's vagina.  *State v. Crossguns*, No. 37079-8-III, slip op. at 4.

On August 2, 2016, stepson Peter witnessed Patrick Crossguns' hands inside

Rhonda's pants, while the father and daughter sat on the living room couch.  *State v.*

*Crossguns*, No. 37079-8-III, slip op. at 5.  Peter reported his observation to Marsha

Matte, who questioned Rhonda and Crossguns about the incident.  *State v. Crossguns*,

No. 37079-8-III, slip op. at 5.  Both denied unsuitable touching.  *State v. Crossguns*, No.

37079-8-III, slip op. at 5.  On August 7, 2016, after Crossguns left for Montana, never to

return home, Rhonda told her mother that Crossguns had stroked and fingered her vaginal

area.

PROCEDURE

The State of Washington charged Patrick Crossguns with rape of a child in the

second degree and child molestation in the second degree.  The State alleged that

Crossguns raped Rhonda when he digitally penetrated her in April or May 2016.  The

State alleged that Crossguns molested Rhonda when he inappropriately touched her while

both sat on the living room couch in August 2016.

Before trial, the State announced its intention to introduce evidence of Patrick

Crossguns' sexual misconduct that did not form the basis for the two charges pled against

him.  *State v. Crossguns*, No. 37079-8-III, slip op. at 6.  The State wished to submit

evidence of Crossguns' sexual abuse of Rhonda from the first time he invasively touched

her in 2015 to his last sexual contact with her in August 2016. *State v. Crossguns*, No. 37079-8-III, slip op. at 6. The trial court, pursuant to ER 404(b), admitted the evidence of Patrick Crossguns' other misconduct because of the relevance of the evidence to motive, intent, plan, an opportunity to groom the victim, and absence of mistake or accident. *State v. Crossguns*, No. 37079-8-III, slip op. at 8. The court further ruled that the evidence served the purpose of showing lustful disposition toward Rhonda. *State v. Crossguns*, No. 37079-8-III, slip op. at 8. As a result of the court's ruling, Rhonda testified, at trial, to incidents of sexual touching beyond those alleged in the criminal information. *State v. Crossguns*, No. 37079-8-III, slip op. at 8.

During trial, Patrick Crossguns' niece and Rhonda's cousin, Susan, testified that Rhonda informed her that she lied when accusing her father of molesting her. *State v. Crossguns*, No. 37079-8-III, slip op. at 8-9. Rhonda, when testifying, denied making this confession to Susan. *State v. Crossguns*, No. 37079-8-III, slip op. at 9.

During the State's closing argument, the prosecutor told the jury that its role included discerning whether Rhonda or her cousin Susan told the truth:

> [Susan] told you about an alleged conversation that she had with [Rhonda] in which [Rhonda] said she was lying, none of this happened. You heard from [Rhonda] earlier, that that conversation never happened. Somebody's lying. *It's your job to determine who's lying.* Is [Rhonda] lying or is [Susan] lying?
> And that's your job entirely, but here's some things that I think you should bear in mind when you discuss that.

Report of Proceedings (RP) at 815 (emphasis added). The prosecutor similarly directed

the jury that it must determine whether Patrick Crossguns or Rhonda spoke the truth:

> But, again, you have the testimony of [Rhonda], on one hand, and [Patrick Crossguns'] testimony on the other hand. Somebody's not telling the truth, and, again, *you're going to have to make that decision*. Who is lying and who is telling the truth.

RP at 817 (emphasis added). Crossguns did not object to the prosecutor's statements.

*State v. Crossguns*, No. 37079-8-III, slip op. at 21.

During defense counsel's summation, counsel emphasized that Rhonda's sister Cathy did not testify at trial. Counsel argued:

> But you can be assured that if she heard anything, she would have been called as a witness. So you can assume, I think fairly and correctly, that there was no evidence that she saw it and she was in that room.

RP at 842.

During the State's rebuttal argument, the prosecutor responded to defense counsel's argument regarding Cathy's absence:

> There's a couple of things in particular I want to respond to. One, you were asked to assume what [Cathy] may or may not have seen, said, heard, or done. None of that is before you. You should not speculate about where [Cathy] is now, about what she may or may not have seen, about what she may or may not have done. None of that is evidence.

RP at 850. Patrick Crossguns did not object to the State's comments.

The trial court instructed the jury that the evidence of Patrick Crossguns' sexual abuse of Rhonda not charged in the information could only be considered for nonpropensity purposes. The jury found Patrick Crossguns guilty as charged.

6

Patrick Crossguns challenges his convictions on appeal. *State v. Crossguns*, No. 37079-8-III, slip op. at 1. We review the appeal for the second time. During our first examination, Crossguns argued that the trial court erred by admitting evidence of his misconduct that did not form the basis of the current charges. *State v. Crossguns*, No. 37079-8-III, slip op. at 10. Crossguns requested this court to abandon Washington's "'lustful disposition'" doctrine, because it conflicted with ER 404(b). *State v. Crossguns*, No. 37079-8-III, slip op. at 10. Crossguns asserted that the prosecutor engaged in misconduct, during closing argument, by informing the jury that it needed to decide who told the truth and by misstating the missing witness doctrine. *State v. Crossguns*, No. 37079-8-III, slip op. at 10. Finally, he contended that the cumulative effect of the prosecutor's misconduct deprived him of a fair trial. *State v. Crossguns*, No. 37079-8-III, slip op. at 10.

During our earlier review, this court questioned the underpinnings of the lustful disposition doctrine but concluded it could not ignore the Washington Supreme Court's acceptance of the doctrine. This court also ruled that the trial court properly admitted evidence regarding Patrick Crossguns' uncharged conduct toward Rhonda. *State v. Crossguns*, No. 37079-8-III, slip op. at 13.

On previous review, this court next held that the prosecutor committed misconduct, during his closing argument, when insisting that the jury must determine whether Rhonda, on the one hand, or cousin Susan and Patrick Crossguns, on the other

7

hand, lied. *State v. Crossguns*, No. 37079-8-III, slip op. at 17. By doing so, the prosecutor mischaracterized the State's burden of proof and undermined Crossguns' presumption of innocence. *State v. Crossguns*, No. 37079-8-III, slip op. at 17. Although Crossguns did not object to the State's misconduct, this court held that the prosecutor's arguments constituted flagrant and ill-intentioned misconduct that demanded reversal of both convictions and a retrial. *State v. Crossguns*, No. 37079-8-III, slip op. at 21, 26. We avoided Crossguns' assigned error regarding the State's purported misstatement of the missing witness doctrine and the contention of cumulative error. *State v. Crossguns*, No. 37079-8-III, slip op. at 10.

The Washington Supreme Court granted the State's petition for review. On review, our high court annulled the lustful disposition doctrine as an independent basis for introduction of evidence. *State v. Crossguns*, 199 Wn.2d 282, 290, 505 P.3d 529 (2022). The court announced that "'lustful disposition'" was no longer a separate, permissible "'other purpose'" to admit prior bad acts under ER 404(b). *State v. Crossguns*, 199 Wn.2d at 290. Rather, the term merely serves as "a label used to refer to permissible ER 404(b) purposes in the specific context of sex crimes." *State v. Crossguns*, 199 Wn.2d at 294. The Supreme Court clarified that evidence admitted under the lustful disposition doctrine may be admissible if introduced for permissible ER 404(b) purposes. *State v. Crossguns*, 199 Wn.2d at 294-95.

Based on the abrogation of the lustful disposition rule, the Washington Supreme Court held that the trial court erred by admitting evidence of Patrick Crossguns' uncharged misconduct under the doctrine. *State v. Crossguns*, 199 Wn.2d at 296. The court, however, held this error harmless, because the trial court properly admitted the evidence for other permissible purposes, including "'intent, plan, opportunity, absence of mistake or accident, . . . and as *res gestae* in the case to show [Rhonda]'s state of mind for her delayed disclosure.'" *State v. Crossguns*, 199 Wn.2d 282, 296 (2022) (alteration in original) (quoting CP at 119).

The Washington Supreme Court agreed with this court's holding that the prosecution committed misconduct during closing arguments when telling the jury to determine which witnesses told the truth. *State v. Crossguns*, 199 Wn.2d at 298. The high court disagreed, however, that the misconduct was flagrant and ill intentioned. The court reasoned that an objection from defense counsel and a subsequent curative instruction would have eliminated any prejudice resulting from the State's improper argument. *State v. Crossguns*, 199 Wn.2d at 299-300. The reigning court remanded to this court for consideration of Patrick Crossguns' claims of: (1) prosecutorial misconduct regarding the State's misstatement of the missing witness doctrine and (2) cumulative error. *State v. Crossguns*, 199 Wn.2d at 300.

LAW AND ANALYSIS

During trial, Patrick Crossguns argued that, because Rhonda's sister, Cathy, did not testify at trial, Cathy never heard the abuse of Rhonda in the girls' shared bedroom. Crossguns thereby implied that the rape and molestations never occurred. Crossguns contends that, in response, the prosecution misstated the missing witness doctrine when it asked the jury not to speculate as to what, if any events, Cathy observed.

Pursuant to the missing witness doctrine, a party may garner a jury instruction when the missing witness is under the opposing party's "control or [is] peculiarly available" to the party. *State v. Montgomery*, 163 Wn.2d 577, 598, 183 P.3d 267 (2008). The instruction informs the jury that it may conclude that the missing witness' testimony would disfavor the opposing party. *State v. Montgomery*, 163 Wn.2d 577, 598 (2008). To enjoy the benefits of the missing witness rule in a criminal case:

> [O]ne must establish such circumstances which would indicate, as a matter of reasonable probability, that the prosecution [the party against whom the missing witness rule was sought to be applied in the case] would not knowingly fail to call the witness in question unless the witness's testimony would be damaging. In other words, "the inference is based, not on the bare fact that a particular witness is not produced as a witness, but on his non-production *when it would be natural for him to produce the witness if the facts known by him had been favorable*.'"

*State v. Blair*, 117 Wn.2d 479, 488, 816 P.2d 718 (1991) (quoting *State v. Davis*, 73 Wn.2d 271, 280, 438 P.2d 185 (1968), *overruled on other grounds by State v. Abdulle*, 174 Wn.2d 411, 275 P.3d 1113 (2012). For the missing witness rule to apply:

10

> [T]he testimony must concern a matter of importance as opposed to a trivial matter, it must not be merely cumulative, the witness's absence must not be otherwise explained, the witness must not be incompetent or his or her testimony privileged, and the testimony must not infringe a defendant's constitutional rights.

*State v. Cheatam*, 150 Wn.2d 626, 652-63, 81 P.3d 830 (2003). The party against whom the rule would operate may explain the witness's absence and avoid operation of the inference. *State v. Blair*, 117 Wn.2d 479, 489 (1991). If the opposing party satisfactorily explains the witness's absence, no inference is permitted. *State v. Blair*, 117 Wn.2d at 489.

We observe that the missing witness doctrine emerges in this appeal in a unique context. Patrick Crossguns, not the State, attempted to benefit from the missing witness doctrine. Nevertheless, Crossguns never sought a missing witness instruction. The court never instructed the jury they could reach any inference by reason of Cathy's failure to testify. Conversely, the trial court never instructed the jury to discount Crossguns' argument that the molestation must not have occurred or else Cathy would have testified to overhearing or seeing the criminal acts.

Patrick Crossguns' claim of prosecutorial misconduct may assume that the missing witness doctrine applied to his prosecution. Nevertheless, we do not know if Cathy remained under the State's peculiar control or that Cathy was peculiarly available to the State. Also, through the testimony of Rhonda, the State explained the lack of testimony

from Cathy. Cathy, as a heavy sleeper, slept through the molestations. Thus, we doubt that the missing witness doctrine applied.

In its rebuttal summation, the State merely sought to rebut Patrick Crossguns' argument that the jury should acquit him because Cathy never testified to having heard him enter the bedroom or assault Rhonda. The State sought to properly explain to the jury, without formally mentioning the doctrine, that the missing witness doctrine should not be employed to presume that Cathy's testimony would have favored Crossguns. The prosecution did not engage in misconduct when asking the jurors not to speculate that Cathy could have and should have heard or seen the criminal behavior of Crossguns if it occurred.

The Washington Supreme Court does not permit this court to reverse based on our belief that the one act of prosecutorial misconduct prejudiced Patrick Crossguns. Because we find no other misconduct, we conclude that Crossguns did not suffer cumulative prejudicial error.

CONCLUSION

We affirm the convictions of Patrick Crossguns.

12

No. 37079-8-III
*State v. Crossguns*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

13