13 P.3d 659 (2000)
103 Wash.App. 564
STATE of Washington, Respondent,
v.
Cecil Steven BAGGETT, Appellant.
No. 18744-6-III.
Court of Appeals of Washington, Division 3, Panel Six.
November 30, 2000.
*660 Hugh M. Spall, Jr., Ellensburg, for Appellant.
Lauri M. Boyd, Deputy Prosecuting Atty., Yakima, for Respondent.
KURTZ, C.J.
The State charged Cecil Steven Baggett with the offense of second degree assault. Following a bench trial, the court found that Mr. Baggett was suffering from diminished capacity at the time he committed the conduct in question. Hence, he could not form the specific intent that is required for assault. See State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995). It therefore acquitted him of that offense. However, the court held that RCW 9.41.270, unlawful display of a firearm, is a lesser-included offense of second degree assault, and it convicted him of the lesser crime. The court found that Mr. Baggett had violated the second portion of RCW 9.41.270(1), which makes it a crime to unlawfully display a firearm in a manner that warrants alarm for the safety of other persons. The court also assessed Mr. Baggett costs of $2,060.13 for the fee of the expert witness who testified for the defense on the issue of diminished capacity.
On appeal, Mr. Baggett contends that the court erred when it convicted him of the unlawful display of a firearm. He argues that the unlawful display of a firearm is not a lesser-included offense of second degree assault. Mr. Baggett also asserts the court erred when it assessed him for the fee of the expert witness. RCW 10.01.160(1) permits such an assessment only against a convicted defendant. Mr. Baggett argues that because the court acquitted him of the second degree assault charge, he is not responsible for costs associated with proving his diminished capacity.
We hold that the superior court properly concluded that the unlawful display of a firearm is a lesser-included offense of second degree assault, and that Mr. Baggett was a convicted defendant, as that term is used in RCW 10.01.160(1). We therefore affirm.
At Mr. Baggett's trial, Yakima Police Officer Joe Salinas testified that he was on patrol duty on June 12, 1997. Around midnight, he observed a parked vehicle with two occupants. The passenger was leaning out of the window and had a rifle. It appeared to Officer Salinas that the individual, later identified as Mr. Baggett, was about to shoot a cat that was on the side of the road. When Mr. Baggett saw the patrol car, he ordered his wife, who was driving the vehicle, to pull away. She did so, but stopped when Officer Salinas activated his siren.
Mr. Baggett got out of the vehicle with the rifle in his hands. Officer Salinas ordered him to drop the weapon. Mr. Baggett then turned around, holding the rifle at hip level, with the barrel pointing toward Officer Salinas. Officer Salinas took cover behind the trunk of the patrol car and continued to order Mr. Baggett to drop the gun. Mr. Baggett turned, ran to a nearby residence, and used the butt of his rifle to beat on the door, yelling at the same time. No one answered, and Mr. Baggett ran back to the street. He still held the rifle at hip level with the barrel turned toward Officer Salinas. Officer Salinas ordered him to drop the weapon. This time, Mr. Baggett obeyed. He began to approach Officer Salinas, "saying something to the effect that it was all over, that [the officer had] got him." But at that point, the door to the residence opened, and Mr. Baggett, followed by his wife, ran inside.
Officer Salinas did not know whether the occupant of the residence knew Mr. Baggett. After securing Mr. Baggett's rifle in the trunk of the patrol car, he knocked on the door. An elderly man answered. Through the open door, Officer Salinas saw Mr. Baggett on the telephone. He was shouting that someone was trying to kill him. Officer Salinas *661 later learned that Mr. Baggett was on the phone with 911 personnel.
The elderly gentleman was Mr. Baggett's father. After Officer Salinas secured the safety of the older man, he handcuffed Mr. Baggett. As he and an assisting officer subdued Mrs. Baggett, Mr. Baggett fled in his handcuffs. Officer Salinas gave chase, and caught him outside the premises.
Officer Salinas transported Mr. Baggett to the police station. He later testified that Mr. Baggett "was yelling things the entire way there." And, once at the station and in his holding cell, he kept yelling out that he wanted something. Officer Salinas and others at the station checked each time, and each time Mr. Baggett said he wanted to know where his wife was and whether she was safe. Each time, the officers assured him she was safe in the holding cell next to his.
The State charged Mr. Baggett with second degree assault on Officer Salinas. Mr. Baggett defended on the basis of diminished capacity. He called to the stand Corrections Officer James Scott Himes, the jailer the night of his arrest. Officer Himes testified that Mr. Baggett was scared to death of the staff, afraid they were going to do something to him. Corrections Officer Nehemiah Lewis confirmed Officer Himes's assessment. And, Viola Baggett, Mr. Baggett's mother, testified that earlier that evening her son had telephoned her and told her that someone was following him and his wife and that he was scared.
Dr. Roland Dougherty, a clinical psychologist, testified in Mr. Baggett's behalf. He evaluated Mr. Baggett on November 12, 1997, and on January 29, 1999. He determined that Mr. Baggett had been using large amounts of methamphetamine and marijuana for a month prior to the charged incident. He had not slept for two or three days before the episode. Mr. Baggett told him that he believed he was being followed by persons who wanted to do him harm and that the police officer was part of this group. In light of the results of psychological testing, Dr. Dougherty was of the opinion Mr. Baggett suffered from a substance-induced psychosis marked by paranoid delusions that prevented him from forming the intent to assault Officer Salinas. The State's expert witness disagreed with Dr. Dougherty.
The court found that Mr. Baggett was unable to form the intent needed to commit second degree assault. Thus, it acquitted him of that charge, but it convicted him of the unlawful display of a firearm so as to warrant alarm for others' safety. See RCW 9.41.270(1). In its oral ruling, the court stated, "Mr. Baggett, at a basic level of understanding, knew he was armed with a firearm and knew he was being confronted by someone. He did not know and was unable to realize, with any specificity to form the intent necessary for second degree assault, who it was and what he was actually doing ." Because Mr. Baggett was acting in a manner that would warrant and cause alarm in other people, the court concluded he was guilty of the gross misdemeanor.
Mr. Baggett appeals his conviction, raising the issues set forth above.
A. Lesser-Included Offense.
An offense is included in a greater offense if (1) all the elements of the lesser offense are necessary elements of the greater offense, and (2) the evidence in the case supports an inference that the lesser crime was committed. State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978); see also State v. Berlin, 133 Wash.2d 541, 545-46, 947 P.2d 700 (1997).
The first, or legal, prong of Workman is satisfied as to the offenses at issue here. See State v. Fowler, 114 Wash.2d 59, 67, 785 P.2d 808 (1990), overruled on other grounds by State v. Blair, 117 Wash.2d 479, 486-87, 816 P.2d 718 (1991); State v. Karp, 69 Wash. App. 369, 375, 848 P.2d 1304 (1993); cf. State v. Fernandez-Medina, 141 Wash.2d 448, 458, 6 P.3d 1150 (2000) (unlawful display of a firearm is a lesser-included offense of second degree assault and is an offense consistent with the defense of diminished capacity). All of the elements of RCW 9.41.270(1) are necessary elements of second degree assault. RCW 9.41.270(1) provides that "[i]t shall be unlawful for any person to carry, exhibit, display, or draw any firearm ... in a manner, under circumstances, and at a time *662 and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons." Under RCW 9A.36.021(c), a person is guilty of second degree assault if he "[a]ssaults another with a deadly weapon." Our courts have generally defined "assault" as an attempt, with unlawful force, to inflict bodily injury upon another, or to cause apprehension of such injury, accompanied with the apparent present ability to give effect to the attempt if not prevented. See State v. Stewart, 73 Wash.2d 701, 703, 440 P.2d 815 (1968); State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995). A person who displays a firearm in the manner described, also commits some, but not all, of the acts necessary for commission of second degree assault.[1]
The next question is whether the evidence in Mr. Baggett's case satisfies Workman's factual prong. That is, does the evidence support an inference that Mr. Baggett committed only the crime of unlawful display of a firearm by handling his rifle in a manner that warranted alarm for the safety of other persons?
Mr. Baggett argues that the portion of RCW 9.41.270(1) pertaining to an act that "warrants alarm for the safety of other persons," in the plural, does not apply here because only Officer Salinas was present. In other words, he believes that the facts limit the State to proving the following offenses, which relate to a single victim: (1) second degree assault, or (2) the unlawful display of a firearm by the alternative means set forth in RCW 9.41.270(1), i.e., by displaying a weapon to intimidate another person.
Mr. Baggett's argument presents an issue of statutory construction. He argues that by using the plural in the phrase, "warrants alarm for the safety of other persons," the Legislature indicated an intent to limit the offense to situations in which more than one person is present and subject to the safety concern. But such a limitation does not appear to serve any logical purpose. A defendant can display a weapon in a manner that warrants safety concerns whether one person is present or one hundred persons are present. We see no reason for the Legislature to include the latter situation, but not the former situation, in the scope of RCW 9.41.270. In addition, a recognized rule of statutory instruction is that courts generally "may construe singular words in the plural and vice versa, unless such a construction would be repugnant to the context of the statute or inconsistent with the manifest intention of the Legislature." Queen City Sav. & Loan Ass'n. v. Mannhalt, 111 Wash.2d 503, 508, 760 P.2d 350 (1988); see also State v. Welty, 44 Wash.App. 281, 283, 726 P.2d 472, review denied, 107 Wash.2d 1002 (1986).
Here, Mr. Baggett held his rifle with the barrel pointing out rather than at the ground or in the air. The manner in which he held the rifle warranted alarm for the safety of Officer Salinas. These facts, coupled with evidence of Mr. Baggett's diminished capacity to form the specific intent for second degree assault, support an inference that he committed only the offense of unlawful display of a firearm.
We therefore affirm Mr. Baggett's conviction.
B. Cost of Expert Witness.
RCW 10.01.160(1) provides in pertinent part, as follows: "The court may require a defendant to pay costs. Costs may be imposed only upon a convicted defendant...." (Emphasis added.) In the judgment entered here, the court ordered Mr. Baggett to pay $2,060.13 for the cost of procuring the testimony of Dr. Dougherty, the court-appointed expert who testified on his behalf on the issue of diminished capacity. Diminished capacity was an issue as to whether Mr. Baggett *663 had the requisite mens rea for second degree assault; it was not an issue as to whether Mr. Baggett was guilty of unlawful display of a firearm. Cf. Fernandez-Medina, 141 Wash.2d at 458, 6 P.3d 1150.
Does RCW 10.01.160 apply to defendants such as Mr. Baggett who are acquitted of the charge to which the costs relate? Mr. Baggett argues that an assessment of costs in these circumstances is unconstitutional because it amounts to punishment for a crime he did not commit.
We found no authority directly on point. However, the court has held that a defendant may properly be assessed costs when he or she is convicted of a lesser-included offense to the offense charged. State v. Earls, 51 Wash.App. 192, 198 n. 4, 752 P.2d 402 (1988). In Earls, the defendant argued that he was not "convicted" for purposes of RCW 10.01.160 because he was convicted of second degree murder, a lesser-included offense to the charged crime of first degree murder. He had offered to plead guilty to second degree murder prior to trial. The court observed the statute did not limit assessment of costs to defendants who were "convicted as charged." Earls, 51 Wash.App. at 198 n. 4, 752 P.2d 402.
In another case, State v. Buchanan, 78 Wash.App. 648, 898 P.2d 862 (1995), the defendant's first trial on a rape charge ended in a mistrial, and he ultimately pleaded guilty to fourth degree assault. He appealed the court's imposition of costs for expenses incurred in the mistrial. The court of appeals affirmed, holding that because the rape and the assault charges "were linked, both substantively and procedurally, to the same prosecution, and because the prosecution resulted in a conviction, the trial court did not exceed its authority or abuse its discretion when it imposed costs for the mistrial under the statute." Id. at 653, 898 P.2d 862. The court noted at page 653, note 3, 898 P.2d 862, that "[t]his case is analogous to a trial in which a jury disagrees on a greater offense but convicts on a lesser included offense." The court believed that "[t]he same should hold true when, as here, the conviction is for a lesser but not included offense that arises from the same facts as the greater offense." Id.
Here, Mr. Baggett was convicted of a lesser-included offense that was related both procedurally and substantively to the charged offense. In these circumstances, the superior court properly assessed him as a "convicted" defendant under RCW 10.01.160(1) for costs related to the prosecution of the greater offense.
Affirmed.
SCHULTHEIS, J., and SWEENEY, J., concur.
NOTES
[1] RCW 9A.08.010(1)(b) provides that "[a] person knows or acts knowingly or with knowledge when:

"(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
"(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute as defining an offense." Subsection (2) of the same statute provides that "[w]hen acting knowingly suffices to establish an element, such element also is established if a person acts intentionally."