# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON , | No. 78037-9-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| ARIANE RE JEFFERSON, | |
| Appellant. | FILED: July 22, 2019 |

LEACH, J. — A jury convicted Ariane Jefferson of unlawful possession of a firearm in the second degree and unlawful display of a weapon. Jefferson challenges the trial court's evidentiary rulings and alleges ineffective assistance of counsel. We remand to strike the DNA[1] collection fee and otherwise affirm Jefferson's convictions.

## FACTS

Micah Hadenfeldt met Ariane Jefferson when she was a teenager. For three years, they had an "on and off" relationship. According to Hadenfeldt, she and Jefferson had some physical fights and domestic violence incidents occurred

---

[1] Deoxyribonucleic acid.

during the relationship. In early March 2017, Hadenfeldt learned she was pregnant.

Around that time, she and Jefferson were not getting along. One night, after Jefferson saw Hadenfeldt "snooping" on his cell phone, he grabbed the phone from her hands and choked her. Hadenfeldt fell to the ground, and Jefferson continued choking her. Hadenfeldt later went to the hospital because she was concerned about her pregnancy.

Hadenfeldt and Jefferson broke up shortly afterward. But they continued to talk and occasionally saw each other. Because they were having a child together, Hadenfeldt wanted the relationship with Jefferson to "work out."

In early April 2017, Hadenfeldt drove Jefferson to a store in South Seattle. While Jefferson was inside the store, Hadenfeldt looked at Jefferson's cell phone. She saw messages that upset her. She drove away, leaving Jefferson at the store. Hadenfeldt took Jefferson's cell phone with her. She later realized there was also a firearm in the car that belonged to Jefferson.

According to Hadenfeldt, Jefferson soon began to badger her to return his property by calling her and sending threatening text messages.[2] On April 17, 2017, Jefferson demanded that Hadenfeldt bring his belongings to the apartment on Capitol Hill where he was staying by 11:00 a.m. He threatened "consequences" if she did not. Hadenfeldt decided to return the firearm but to

---

[2] Jefferson owned a second cell phone.

keep Jefferson's cell phone as "leverage" to continue talking to him. Jefferson and Hadenfeldt exchanged numerous hostile text messages during the morning.

Hadenfeldt went to the apartment building and waited in the alleyway behind the building. She sent text messages to Jefferson, refusing to meet him in the building's glassed-in entryway and demanding that he walk outside to her. Jefferson eventually came outside and walked toward her. Hadenfeldt noticed that Jefferson had a gun in the pocket of his sweatshirt. Hadenfeldt said Jefferson suddenly started "sprinting" toward her. Hadenfeldt said she walked backward uphill, and Jefferson began to pull the gun out. Hadenfeldt then took Jefferson's loaded firearm out from her pocket and shot him five or six times.[3] No witnesses saw the shooting. But a neighbor heard a man's voice exclaim, "[N]o, baby no," quickly followed by gunshots. Hadenfeldt later explained that she had not planned to shoot Jefferson but was frightened for her life because of his previous threats and the way he aggressively approached her with a gun.

Bullets struck Jefferson in the hand and buttocks. Hadenfeldt saw Jefferson fall to the ground and fled. She ran for several blocks and threw the gun into the bushes. Hadenfeldt then turned herself in to the police. A resident of the apartment building saw Jefferson toss a firearm into some bushes as he

---

[3] Hadenfeldt said she did not remember whether or when she cocked the firearm in preparation to fire it.

fell. The police later recovered a loaded .45 caliber automatic firearm from that location.[4] The police never found the firearm Hadenfeldt used to shoot Jefferson.

The State charged Jefferson with assault in the second degree and unlawful possession of a firearm in the second degree. After a trial, the jury acquitted Jefferson of assault but found him guilty of the lesser-included offense of unlawful display of a weapon and unlawful possession of a firearm. The court imposed a standard range sentence of 25 months on the unlawful possession of a firearm felony charge and 12 months of probation with a suspended sentence on the unlawful display of a weapon charge. Jefferson appeals.

ANALYSIS

ER 404(b) Evidence

Jefferson claims the trial court abused its discretion when it admitted Hadenfeldt's testimony that he strangled her a month before the shooting.

We review a court's decision to admit or exclude evidence of a prior violent act for abuse of discretion.[5] A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds.[6]

ER 404(b) bars the admission of evidence of prior bad acts for the purpose of proving a person's character and showing that the person acted in conformity with the character.[7] But a court may admit the same evidence for

---

[4] The firearm Jefferson jettisoned was a different caliber than the firearm Hadenfeldt used.

[5] State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).

[6] Magers, 164 Wn.2d at 181.

[7] State v. Gresham, 173 Wn.2d 405, 420-21, 269 P.3d 207 (2012).

another purpose, depending on its relevance and the balancing of its probative value and danger of unfair prejudice.[8] Washington courts have admitted prior acts of domestic violence under ER 404(b) for a number of purposes. These include showing the reasonableness of a victim's fear where fear is an element of the charged offense.[9]

In State v. Magers,[10] a plurality of the supreme court considered the trial court's admission of prior misconduct evidence to show that the victim's fear was reasonable and to allow the jury to assess the victim's credibility. Magers faced several charges, including assault in the second degree.[11] In light of the definition of "assault" in the instructions, the reasonableness of the victim's "apprehension and fear of bodily injury" was an issue in the case.[12] Because Magers pleaded not guilty and the State had the burden of proving every element of assault, the court upheld the admission of the ER 404(b) evidence to show the victim's reasonable fear to prove assault, as defined by the instructions.[13]

Relying on the concurrence of two justices in Magers, Jefferson contends that a majority of the court did not agree that ER 404(b) evidence is admissible to prove a victim's "reasonable apprehension." We disagree with Jefferson's interpretation of Magers. The concurring justices explained that under the theory of assault the State advanced in that case, the State was not required to prove

---

[8] Gresham, 173 Wn.2d at 420-21.
[9] Magers, 164 Wn.2d at 186.
[10] Magers, 164 Wn.2d at 181,184.
[11] Magers, 164 Wn.2d at 177-78.
[12] Magers, 164 Wn.2d at 183.
[13] Magers, 164 Wn.2d at 183.

the victim's state of mind.[14]    According to the concurring justices, the State, in fact, offered the evidence to explain the victim's recantation.[15]    The concurring justices did not dispute the position of the lead opinion that under proper circumstances, the State may introduce evidence to prove the reasonableness of the victim's fear.  They merely disagreed with the application of that proposition to the facts of the case.

Here, the State primarily focused on the definition of "assault" that required proof of an act that "creates in another a reasonable apprehension and imminent fear of bodily injury."  The trial court admitted the evidence of the strangling incident because it was "relevant to Ms. Hadenfel[d]t's reasonable fear as an element of Assault in the Second Degree."  And the State properly introduced the evidence for this purpose.  The point of disagreement raised by the concurrence in Magers has no bearing under these facts.

In any event, evidentiary error is not grounds for reversal unless it results in prejudice.[16]    "In analyzing the erroneous admission of evidence in violation of ER 404(b), we apply the nonconstitutional harmless error standard."[17]    This standard requires us to decide whether there is a reasonable probability that the outcome of the trial would have been different absent the error.[18]    Because the jury acquitted Jefferson of assault, there is no reasonable probability the jury

---

[14] Magers, 164 Wn.2d at 194.
[15] Magers, 164 Wn.2d at 194.
[16] State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).
[17] State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014).
[18] Gunderson, 181 Wn.2d at 926.

considered the evidence for an improper purpose. The evidence supporting the unlawful possession of a firearm charge was essentially undisputed. Jefferson fails to establish prejudice.

Evidence of Pregnancy

Jefferson next contends the court abused its discretion when it admitted evidence that Hadenfeldt was pregnant at the time of the shooting. He maintains that the pregnancy was not relevant to any issue in the case, was overly prejudicial under ER 403, and unfairly allowed the State to appeal to the jury's sympathies.

But here, also, even assuming that the prejudicial impact of the evidence outweighed its probative value, Jefferson cannot show prejudice. The evidence related only to the assault charge and the reasonableness of Hadenfeldt's explanation for why she shot Jefferson. The State argued that considering her pregnancy and her testimony that she did not want to end her relationship with Jefferson, Hadenfeldt's claim that she shot Jefferson out of fear and panic was credible.

But, again, because the jury acquitted Jefferson of assault, we can assume the jurors did not wholly accept Hadenfeldt's explanation. And, while the State argued that Hadenfeldt's pregnancy made her explanation for her actions more plausible, it did not rely on the evidence of pregnancy to appeal to the jury's sympathies. In fact, the State acknowledged that because of her demeanor and

the offensive messages she sent to Jefferson, it was not easy to empathize with Hadenfeldt. Any error in admitting the evidence was harmless.[19]

Ineffective Assistance of Counsel

Jefferson contends that his trial counsel provided ineffective assistance by (1) failing to enter into a stipulation to sanitize the evidence of his prior convictions and (2) proposing a jury instruction for the offense of unlawful display of a weapon that omitted an essential element of the crime.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel.[20] A defendant receives ineffective assistance if (1) the attorney's conduct falls below a minimum objective standard of reasonableness and (2) there is a reasonable probability the attorney's conduct affected the outcome of the case.[21] Failing to satisfy either part of this analysis ends the inquiry.[22] "There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment."[23] There is no ineffective assistance if defense counsel's conduct can be characterized as a legitimate trial strategy or tactic.[24]

_____

[19] See Gunderson, 181 Wn.2d at 926.
[20] Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[21] State v. Benn, 120 Wn.2d 631, 663, 845 P.2d 289 (1993).
[22] State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).
[23] Benn, 120 Wn.2d at 665.
[24] Benn, 120 Wn.2d at 665.

Failure To Stipulate to Prior Convictions

To prove that Jefferson committed unlawful possession of a firearm in the second degree, the State had to prove that he owned, possessed, or had in his control a firearm "[a]fter having previously been convicted . . . of any felony."[25] "The existence of a constitutionally valid prior conviction is an essential element of the offense, one the State must prove beyond a reasonable doubt."[26]

In Old Chief v. United States,[27] the United States Supreme Court recognized the prejudicial effect that evidence of a defendant's prior conviction may have on the trial. Under Old Chief and its progeny, when the existence of a prior conviction is an element of the offense, a trial court must accept a defendant's stipulation to the prior conviction.[28] This stipulation allows a defendant to avoid the potential prejudice that flows from having the jury hear the details of his or her prior convictions.[29]

In this case, defense counsel chose not to stipulate. Therefore, to prove the prior conviction element of unlawful possession of a firearm, the State introduced evidence that Jefferson had two prior convictions of conspiracy to commit a violation of the Uniform Controlled Substances Act[30] and a prior conviction of unlawful possession of a firearm. Jefferson claims there was no

---

[25] RCW 9.41.040(2)(a)(i).
[26] State v. Reed, 84 Wn. App. 379, 384, 928 P.2d 469 (1997).
[27] 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).
[28] State v. Humphries, 181 Wn.2d 708, 717, 336 P.3d 1121 (2014) (citing Old Chief, 519 U.S. at 174).
[29] State v. Case, 187 Wn.2d 85, 87, 384 P.3d 1140 (2016).
[30] Ch. 69.50 RCW.

conceivable strategic reason not to stipulate to unnamed felonies. He posits there is a reasonable probability that the jury would not have convicted him of two firearm offenses had it not learned that he had previously committed a firearm offense.

But the record reflects a tactical basis for counsel's decision. A month before trial, Jefferson's counsel expressed uncertainty about whether a stipulation would serve Jefferson's best interests. Counsel observed that Jefferson's criminal history was not especially egregious. He was concerned that failure to name the crimes might lead the jury to speculate that he was convicted of more serious crimes. Just before trial began, counsel confirmed his decision not to stipulate and suggested a limiting instruction.[31]

By naming the convictions, defense counsel avoided the possibility that the jury would presume Jefferson previously committed more serious, violent crimes. The refusal to stipulate also forced the State to prove the convictions and gave Jefferson an opportunity to attack the State's evidence. Counsel made a legitimate tactical decision. And given the strength of the evidence on the unlawful possession charge and the fact that Jefferson was acquitted of assault, the most serious charge he faced, we cannot conclude that counsel's decision prejudiced Jefferson.

---

[31] The court provided a limiting instruction informing the jury that it could consider Jefferson's prior convictions for the "sole purpose" of determining whether the defendant had been previously convicted of a "felony offense that disqualifies him from possessing a firearm" and that the jury was to consider the evidence for no other purpose.

## Unlawful Display of a Weapon Instruction

For the unlawful display of a weapon charge, defense counsel proposed, and the trial court gave, instructions that tracked the language of two Washington Pattern Jury Instructions, 133.40 and 133.41.[32]

The definitional instruction provided,

A person commits the lesser crime of unlawfully displaying a weapon when he or she carries, exhibits, displays or draws a firearm in a manner, under circumstances, and at a time and place that manifests an intent to intimidate another or that warrants alarm for the safety of another person.[33]

The "to convict" instruction provided, in relevant part,

To convict the defendant of the crime of unlawfully displaying a weapon, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about April 17, 2017, the defendant carried, exhibited, displayed or drew a firearm apparently capable of producing bodily harm;

(2) That the defendant carried, exhibited, displayed or drew the weapon in a manner, under circumstances and at a time and place that manifested an intent to intimidate another or warranted alarm for the safety of other persons; and

(3) That this act occurred in the State of Washington.[34]

These instructions encompass the language of the unlawful display of a weapons statute, RCW 9.41.270(1), which states,

It shall be unlawful for any person to carry, exhibit, display, or draw any firearm, dagger, sword, knife or other cutting or stabbing

---

[32] 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 133.40 & 133.41 (4th ed. 2016) (WPIC).
[33] See WPIC 133.40.
[34] See WPIC 133.41.

instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

Subsection (3) of the statute also sets forth five circumstances to which the offense does not apply:

Subsection (1) of this section shall not apply to or affect the following:

(a) Any act committed by a person while in his or her place of abode or fixed place of business;

(b) Any person who by virtue of his or her office or public employment is vested by law with a duty to preserve public safety, maintain public order, or to make arrests for offenses, while in the performance of such duty;

(c) Any person acting for the purpose of protecting himself or herself against the use of presently threatened unlawful force by another, or for the purpose of protecting another against the use of such unlawful force by a third person;

(d) Any person making or assisting in making a lawful arrest for the commission of a felony; or

(e) Any person engaged in military activities sponsored by the federal or state governments.[35]

Jefferson argues that subsection (3) provides additional elements that the State is required to prove. And based on the evidence in this case, he contends that in addition to proving the elements described in subsection (1), the State was required to prove that he was not "acting for the purpose of protecting himself . . . against the use of presently threatened unlawful force by another."[36]

---

[35] RCW 9.41.270(3). Subsection (2) of the statute provides that the offense is a gross misdemeanor and that a conviction also results in revocation of the defendant's concealed weapons license.
[36] RCW 9.41.270(3)(c).

According to Jefferson, counsel rendered constitutionally inadequate assistance by proposing an instruction that failed to include this essential element of the crime.

Jefferson relies on State v. Kyllo.[37] In that case, the Washington Supreme Court determined that competent counsel would have realized that a pattern jury instruction pertaining to the law of self-defense was incorrect based on several relevant appellate court decisions.[38] Therefore, counsel's failure to "research or apply relevant law" amounted to deficient performance.[39]

But where there is no case law indicating that a pattern jury instruction misstates the law, it is not deficient performance for defense counsel to propose such an instruction.[40] In such circumstances, "counsel can hardly be faulted for requesting a jury instruction based upon a then-unquestioned [pattern jury instruction]."[41]

Jefferson does not identify any decision by a Washington court to support his position that the pattern jury instructions defining "unlawful display of a weapon" are erroneous. In the context of lesser included offense analysis, our

---

[37] 166 Wn.2d 856, 215 P.3d 177 (2009).
[38] Kyllo, 166 Wn.2d at 867.
[39] Kyllo, 166 Wn.2d at 868-69.
[40] State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999) (invited error doctrine precluded reversal even though a jury instruction erroneously defined "self-defense").
[41] Studd, 137 Wn.2d at 551.

courts have described the elements of unlawful display of a weapon as those set forth in subsection (1), consistent with the pattern instructions.[42]

In State v. Owens,[43] a case Jefferson does not mention, in addition to the three elements set forth in WPIC 133.41, defense counsel proposed a "to convict" instruction that added an exception under RCW 9.41.270(3)(a) as a fourth element. The district court declined to give Owens's proposed instruction.[44] Division Two of this court affirmed the conviction, concluding that RCW 9.41.270(3)(a) was inapplicable, as it was undisputed the defendant was neither inside his home nor in a structure attached to his home when the crime occurred.[45] Owens does not foreclose an argument that, where applicable, an exception set forth in RCW 9.71.270(3)(c) should be included in the instructions as an element. But, at the same time, the decision did not resolve whether the statutory exceptions should be treated as elements or defenses and neither holds nor suggests that the pattern instructions misstate the law.

Under these circumstances, defense counsel did not provide ineffective assistance by proposing an instruction based upon the pattern jury instructions.[46]

---

[42] State v. Baggett, 103 Wn. App. 564, 569, 13 P.3d 659 (2000) (all of the elements of RCW 9.41.270(1) are necessary elements of second degree assault); accord State v. Fowler, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), overruled on other grounds by State v. Blair, 117 Wn.2d 479, 816 P.2d 718 (1991).

[43] 180 Wn. App. 846, 851, 324 P.3d 757, review denied, 181 Wn.2d 1025 (2014).

[44] Owens, 180 Wn. App. at 851.

[45] Owens, 180 Wn. App. at 855.

[46] See Studd, 137 Wn.2d at 551; State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

With regard to prejudice, Jefferson asserts there was substantial evidence from which the jury could have inferred that he displayed a weapon only to protect himself. Specifically, Jefferson points to Hadenfeldt's taunting text messages and evidence that she forced him out into the open, placing herself in a position of "field advantage." On the other hand, as the State points out, only Hadenfeldt testified about the events that led up to the shooting. Her testimony that Jefferson ran toward her while drawing a firearm from his pocket was therefore undisputed. In view of the conflicting evidence, we cannot conclude that there is a reasonable likelihood that the outcome would have been different had the jury been instructed in accordance with RCW 9.41.270(3)(c). Accordingly, Jefferson's ineffective assistance of counsel claim fails.

DNA Collection Fee

Finally, Jefferson seeks to strike the $100 DNA fee from his judgment and sentence. The State concedes that while this legal financial obligation was properly imposed at the time of sentencing, we should remand to strike the fee pursuant to recently amended RCW 43.43.7541 and State v. Ramirez.[47] We accept the State's concession and agree.

---

[47] 191 Wn.2d 732, 426 P.3d 714 (2018).

We remand to the trial court to strike the $100 DNA fee. We otherwise affirm Jefferson's convictions and sentence.

_____ Leach, J.

WE CONCUR:

_____          _____